Dennis BROCK, a minor, by and through his guardian ad litem, Goldie Baer,
Appellant,

v.

ROGERS & BABLER, INC., Appellee.

ROGERS & BABLER, INC.,
Cross-Appellant,

v.

Dennis BROCK, a minor, by and through his guardian ad litem, Goldie Baer,
Cross-Appellee.

Nos. 2095, 2102.

Supreme Court of Alaska.

June 11, 1975.

Clyde C. Houston of Houston & Lytle, Anchorage, for appellant and cross-appellee.

Robert J. Dickson of Atkinson, Conway, Young, Bell & Gagnon, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

CONNOR, Justice.

In 1971 appellant, who was then a seven-year old child, suffered severe injuries from nearly drowning in a body of water that had formerly been a gravel pit. He brought an action against appellee, a gravel contractor, who as lessee of the property in question, had once extracted gravel from the site. Appellee had relinquished control of the land to its owners about three years before appellant's injuries. The superior court granted summary judgment in favor of appellee, and from that judgment this appeal has been taken.

This appeal raises certain questions about the liability of a former occupant of land for injuries resulting from activities of the occupant while upon the land.

### I.

On September 14, 1957, Louis Smith and Marshall and Betty Jean Lovett leased about 44 acres of real property near Anchorage to Cheney Construction Company. The lease agreement granted Cheney the right to remove "any and all mineral aggregates" (gravel) from the property in

exchange for specified rental-royalty payments. The term of the lease was ten years, from January 1, 1958, to December 31, 1967. The agreement gave the lessee an option to renew the lease for an additional five-year term. The agreement also provided that,

". . . [n]otwithstanding the foregoing the Lessee shall have the right to terminate this Lease at any time during the initial Lease period, or any extension thereof, upon twelve (12) months written notice to the Lessors . . . ."

As to the condition the land should be left in after termination of the lease, the agreement stated as follows:

"During stripping operations upon the leased premises any excess overburden shall be placed in areas where it may be conserved and at the termination of this Lease Lessee shall, and hereby agrees, to uniformly spread such overburden over any level or uniform area where it is practical so to do. At the termination of this Lease all slopes shall be graded uniformly and all areas shall be so treated that there will be no slopes steeper than 2 to 1. Upon any termination of this Lease by the Lessee or by expiration of Lease term the Lessee shall have the right to and shall remove all equipment, buildings, structures, and other installations from the premises and property and shall remove or burn all accumulation of debris."

A supplement to the lease agreement dated April 1, 1964, indicated that Cheney Construction Company had been succeeded in interest by Norcoast Constructors, Inc. On August 20, 1966, Norcoast, for $75,000, assigned the lease to a joint venture consisting of Rogers Construction, Inc., and Babler Bros., a partnership (hereinafter referred to as Rogers and Babler).[1]

Apparently, on March 22, 1967, Rogers & Babler sent a notice to the owners renewing the lease. However, on July 1, 1968, certified letters were sent to the owners countermanding the renewal notice and terminating the lease, as was allowed by the original agreement. In an affidavit accompanying Rogers & Babler's motion for summary judgment, John Seawell, general manager of the joint venture and vice-president of the present corporation stated the following:

"4. That the leasehold interest mentioned in this affidavit was used by the joint venture of Roberts Construction, Inc., and Babler Brothers as a gravel pit operation; that the business records of affiant's employer indicate that the gravel pit operations ceased on July 31, 1968, and that since that time neither the joint venture nor any of its constituent members have been in possession or control of or carried on any operations on the real estate described in the Complaint, with the exception that on November 8, 1968, pursuant to the request of Mr. M. R. Lovett, Jr., one of the owners of the real estate, Rogers Construction, Inc., and Babler Brothers removed certain debris from the said real estate in accordance with lease requirements as to cleanup of the premises. Early in 1969, affiant's employer removed a gate to the entrance of the real estate described in the Complaint at the request of one Wesley Jack."

Photographs of the land in question show that gravel mining activities had resulted in the creation of an artificial lake on the land long before Rogers & Babler began operations. Rogers & Babler contends that before it vacated the pit, it conducted proper grading of slopes, spreading of overburden and general cleanup operations to comply with the lease agreement and to satisfy Marshall Lovett, ostensibly the representative of all the owners. In any case, it seems quite evident that all the owners were aware, or had reason to be aware, of the type of activities conducted by Rogers & Babler on the premises.

---

1. The two companies making up this joint venture were incorporated as Rogers & Babler, Inc., in 1970.

Sometime prior to June 24, 1971, ownership of the property in question was transferred from Mr. Smith and the Lovetts to Anna May Martin, and L. W. and L. Margaret Hines.

On June 24, 1971, almost three years after Rogers & Babler had left the property, appellant Dennis Brock was nearly drowned in the artificial lake left by the gravel removal operations. His body was recovered and artificial respiration kept him alive. His brain, however, was severely and irreversibly damaged by lack of oxygen. He had not regained consciousness at the time this suit was commenced.

On November 16, 1971, appellant, through a guardian ad litem, filed suit against the landowners Martin and Hines, and Rogers & Babler. Mrs. Martin and the Hines filed answers on December 15, 1971, and March 9, 1972, respectively, while Rogers & Babler instead filed a motion for summary judgment.

On November 7, 1972, landowner Anna May Martin cross-complained against Rogers & Babler alleging that the lease contained an indemnity clause and that any dangerous condition of the lake bottom was unknown to her, having been concealed by Rogers & Babler. On January 10, 1973, landowners L. W. and L. Margaret Hines also cross-complained, alleging breach by Rogers & Babler of the grading requirements of the contract and alleging that the "hold harmless" clause of the lease agreement should result in their indemnification.

On February 27, 1973, a hearing was held on Rogers & Babler's summary judgment motion against Dennis Brock. The motion was granted.

On April 27, 1973, Rogers & Babler filed a motion for summary judgment against the two cross-complainants, supplying an affidavit in addition to the documents attached to its summary judgment motion against Dennis Brock. On May 31, 1973, Anna May Martin filed a motion for summary judgment on her cross-complaint against Rogers & Babler.

On July 9, 1973, appellant petitioned the court for approval of a settlement which had been reached with the landowners. In settling, the Hines agreed to pay $85,000, Mrs. Martin agreed to pay $25,000, and both agreed to assign to plaintiff their cross-claims against Rogers & Babler. The settlement was approved and the action against the landowners dismissed with prejudice.

In August of 1973 appellant moved for reconsideration of the summary judgment motion which was granted in February. The motion for reconsideration was denied. From a judgment of dismissal this appeal was taken.

## II.

■ Appellant first seeks to impose liability upon Rogers & Babler under the "attractive nuisance" doctrine. That doctrine, adopted by us in Taylor v. Alaska Rivers Navigation Co., 391 P.2d 15 (Alaska 1964), provides that a possessor of land may, under certain circumstances, be held liable to trespassing children for harm caused by an artificial condition upon the land. Restatement (Second) of Torts § 339 (1965). However, because Rogers & Babler was not an occupant or possessor of the land when the injury occurred, the "attractive nuisance" doctrine has no direct application.[2]

■ The general rule of law is that former possessors of land are not liable for injuries caused to others while upon the land by any dangerous condition, natural or artificial, which existed when the possession of the land was transferred.[3] Restatement (Second) of Torts § 352 (1965),

2. *Accord*, Wiles v. Assoc. of Commerce of Decatur, 332 Ill.App. 375, 75 N.E.2d 526 (1947).

3. *See generally* Annot.: "Liability of Vendor or Grantor of Real Estate for Personal Injury to Purchaser or Third Person Due to Defective Condition of Premises," 48 A.L.R. 3d 1027 (1973).

dealing with the liability of a vendor of land, states:

"Except as stated in Sec. 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession."

■ While the principle here expressed refers to vendors of land, it is broad enough to cover a former lessee who had relinquished his possessory interest in the premises.[4] The rationale is grounded in a general policy which seeks to limit liability to persons in possession and control of the land. One who lacks possession and control of property normally should not be held liable for injuries which he is no longer in a position to prevent.[5] This principle applies with equal force to previous tenants, as well as to past owners of property.

An exception to the rule of non-liability is set forth in Restatement (Second) of Torts § 353 (1965):

"(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

Appellant contends that Rogers & Babler's conduct fits within the exception which the Restatement carves out and, therefore, appellee's motion for summary judgment should have been denied.

■ Analysis of appellant's contention is facilitated by consideration of the rules surrounding motions for summary judgment in Alaska.[6] Initially, the moving party has the burden of showing that the case presents no material issue of fact and that the law requires judgment in its favor. In seeking to discharge this burden, the movant must submit admissible evidence.[7]

■ Once the moving party has met this obligation, the respondent can avoid summary judgment only by producing competent evidence to show that there are issues of material fact to be tried.[8] The respondent must set forth specific facts showing that he could produce admissible

---

4. "A possessor of land is . . .
     (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it . . ."
   Restatement (Second) of Torts § 328E (1965).
   See Parrott v. United States, 181 F.Supp. 425, 428 (S.D.Cal.1960).

5. See McQuillan v. Clark Thread Co., 12 N.J. Misc. 409, 172 A. 370, 371–72 (1934) ; Copfer v. Golden, 135 Cal.App.2d 623, 288 P.2d 90, 96–7 (1955).

6. See Alaska R.Civ.P. 56; Braund, Inc. v. White, 486 P.2d 50, 53–6 (Alaska 1971).

7. See, e. g., Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough, 527 P.2d 447, 450 (Alaska 1974) ; Braund, Inc. v. White, 486 P.2d 50, 54 n. 5 (Alaska 1971).

8. See, e. g., Braund, Inc. v. White, 486 P.2d 50, 54 n. 5 (Alaska 1971) ; Twelve Hundred "L" Street Corp. v. Inlet Co., 438 P.2d 708, 712 (Alaska 1968).

evidence reasonably tending to dispute the movant's evidence.[9] Assertions of fact in pleadings and memoranda are not admissible in evidence and cannot be relied upon for the purposes of summary judgment.[10]

In the case at bar, Rogers & Babler presented, as part of its motion for summary judgment, affidavits and documentary evidence in the form of correspondence and a lease agreement. These items tended to show that Rogers & Babler had ended its leasehold interest and its possession and control of the premises in question on July 31, 1968; that in November, 1968, J. M. Lovett, a previous co-owner of the property, had requested appellee to return to the premises for some additional "cleanup" activities; and that appellee apparently had complied with this request, and has had no other business interactions with the property since early 1969.

In the proceedings before Judge Singleton, appellant Brock sought to overcome Rogers & Babler's motion for summary judgment by the submission of a memorandum and a "statement of genuine issues." We have reviewed this material thoroughly and find that it fails, for three separate reasons, to controvert appellee's motion.

First, Alaska law clearly states that a party may not rely on pleadings or memoranda in seeking to satisfy its burden in a summary judgment proceeding.[11] No assertions in appellant's "statement of genuine issues" would bring Rogers & Babler within the purview of the liability created by Restatement (Second) of Torts § 353 (1965). Nor was Brock's reliance on § 353 expressly set forth in any of his pleadings or memoranda. Instead, he adopted this theory of liability through incorporation by reference of a memorandum filed by then co-defendant Anna May Martin.

Second, the memorandum of Anna May Martin is insufficient to overcome Rogers & Babler's motion because it is a bare memorandum, unsupported by affidavits, documents, and the like. In addition, the memorandum itself fails to "set forth specific facts showing that there is a genuine issue for trial," as expressly required by Alaska Civil Rule 56(e).

Finally, appellant has failed to demonstrate in any manner certain elements essential to liability predicated on the Restatement (Second) of Torts § 353. Thus, for example, there is no showing that the owners-transferees, Smith and Lovett, did not know and should not have known of an uneven bottom in the lake which formed in the abandoned gravel quarry.[12] Nor has appellant demonstrated or asserted that Rogers & Babler knew that the owners-transferees would not realize nor discover such a hazard.[13] Indeed, the documents which Rogers & Babler submitted suggest that the owners-transferees had quite carefully inspected the premises, and had no complaints regarding the bottom of the gravel pit. Finally, appellant has offered no case law or other material to show that, under the facts of this case, the hazard complained of should not have been discovered by the owners-transferees over a period of almost three years.[14]

In summary, appellant's attempt to utilize § 353 to overcome Rogers & Babler's motion, is insufficient, both procedurally and substantively.

---

9. Miller v. City of Fairbanks, 509 P.2d 826, 829 (Alaska 1973); Braund, Inc. v. White, 486 P.2d 50, 54 n. 5 (Alaska 1971).

10. Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough, 527 P.2d 447, 450 (Alaska 1974); Braund, Inc., v. White, 486 P.2d 50, 54 n. 5 (Alaska 1971).

11. *Id.*

12. Restatement (Second) of Torts § 353(1) (a) (1965). *See also* Carlson v. Hampl,

284 Minn. 85, 169 N.W.2d 56, 58 (Minn. 1969).

13. Restatement of Torts (Second) § 353(1) (b).

14. Restatement of Torts (Second) § 353(1) (a) (1965). *Cf.* Hut v. Antonio, 95 N.J. Super. 62, 229 A.2d 823 (1967); Leigh v. Wadsworth, 361 P.2d 849, 856–57 (Okla. 1961) (Halley, J., dissenting).

Finally, appellant attempts to rely on Restatement (Second) of Torts § 385 to defeat Rogers & Babler's motion. That section states:

"One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others."

§ 385 speaks of the person subject to liability as "one who on behalf of the possessor of land erects a structure or creates any other condition thereon . . . ." The words "on behalf of the possessor" are defined as follows in § 383, comment *a*:

"The words 'acting on behalf of the possessor' are used to indicate that the person in question is acting not only for the purposes of the possessor but also by his direction or consent and therefore by his authority. One acting on behalf of the possessor may do so as a servant or as an independent contractor. The fact that the person acting on behalf of the possessor is doing so as his servant rather than as an independent contractor, whether for pay or gratuitously, may be important in determining whether the possessor is subject to liability for the manner in which such person carries out the directed activity. It does not, however, affect the liability of the person who is acting on behalf of the possessor."

 The evidence submitted by Rogers & Babler in support of its motion for summary judgment reveals a leasehold relationship between appellee and the prior owners of the property. Appellee was not serving as an agent, contractor or employee of the landowners, but rather, was extracting gravel, as a lessee, for its own use in fulfilling a road construction contract. This clearly is not the sort of relationship which the Restatement was intended to cover, since § 385 is subsumed within a topic heading labled "liability of Persons Other Than a Possessor, Vendor, or Lessor."

### III.

 Rogers & Babler have filed a separate cross-appeal (Case No. 2102) alleging that the trial court erred in staying its decision on their motion for attorney's fees, pending this court's decision in the appeal brought by Dennis Brock. We find the proceedings below regarding attorney's fees to be ambiguous and unclear. No formal order on the issue has been entered. We note that related matters in this case are still pending. Therefore we will not rule on the issue of attorney's fees at this time.

The summary judgment is affirmed, and the case is remanded to the superior court.

Affirmed.