The GREAT ATLANTIC & PACIFIC
TEA COMPANY, INC.,
Defendant-Appellant,

v.

Leslie WILSON, Plaintiff-Appellee,

PH & T Realty Corporation,
Defendant-Appellee,

Paul Teegarden, Defendant-Appellee.

No. 1-979A255.

Court of Appeals of Indiana,
First District.

July 28, 1980.

Rehearing Denied Sept. 3, 1980.

Robert L. Bever, Harlan, Schussler, Keller & Boston, Richmond, for defendant-appellant.

Robert L. McLaughlin, Dawn Sturwold, Wooden, McLaughlin & Sterner, Indianapolis, Richard N. Smith, Himelick, Himelick & Smith, Connersville, for Leslie Wilson.

G. Daniel Kelley, Jr., Marc C. Frankenstein, Ice, Miller, Donadio & Ryan, Indianapolis, for PH & T Realty Corp. and Paul Teegarden.

NEAL, Judge.

### STATEMENT OF THE CASE

This is an appeal by defendant-appellant The Great Atlantic & Pacific Tea Company, Inc. (A&P) from an adverse judgment against both A&P and PH&T Realty Corporation (PH&T) awarding damages for personal injuries to plaintiff-appellee Leslie

Wilson (Wilson). PH&T does not appeal, but has filed a brief in support of the judgment against A&P.

We reverse.

## FACTS

The facts necessary for decision in this case are not materially disputed and are as follows: On January 26, 1959, A&P entered into an agreement with PH&T by the terms of which PH&T would construct a store building in Connersville according to specifications approved by A&P, and would lease the building to A&P on specified terms. The building was completed by PH&T and occupied by A&P until the end of 1972, when A&P served notice on PH&T that it did not intend to renew the lease and would vacate the premises at year's end. A&P vacated the building and removed all its fixtures, and on January 8, 1973, a lease termination agreement was executed effectively terminating the lease on December 31, 1972. Section 24 of the lease provided, in part, that "at the expiration of the said term or extension thereof, lessee will quit and surrender the demised premises in as good state and condition as received." Testimony disclosed that PH&T considered that A&P had performed Section 24.

The plans and specifications for the building called for the creation of an opening in the sales floor of the building to accommodate a conveyor to facilitate the moving of stock from storage in the basement to the sales floor. The building was so constructed. A&P entered upon its tenancy with the building in that condition, and the condition remained when A&P vacated the building.

Upon A&P's vacating the premises, PH&T had the windows boarded up. A&P locked the building, delivered the keys to an agent designated by PH&T, and caused the utilities to be transferred to the account of PH&T. PH&T assumed control of the premises and commenced efforts to sell or lease the building. On February 14, 1973, a realtor, by prior agreement with and the consent of PH&T, undertook to show the building, unsupervised by any officer or agent of PH&T, to a group of prospective

purchasers including Wilson. Unable to find and operate light switches, the group proceeded through the darkened building. Wilson fell into the conveyor opening and was injured.

## ISSUE

A&P has preserved and argued six errors. Insomuch as we are reversing this case on its merits and ordering judgment to be entered for A&P, we are addressing only A&P's assertion that the trial court erred in overruling A&P's motion for judgment on the evidence in that A&P had no duty to Wilson.

The pivotal issue as stated in A&P's brief is this: A&P contends it was a lessee and, upon the termination of the lease, had surrendered possession to PH&T. At the time of the accident Wilson was not an invitee of A&P but was an invitee at PH&T's invitation and on PH&T's business while PH&T was in exclusive control of the premises; therefore, A&P owed no duty to Wilson.

The arguments of PH&T and Wilson in support of the judgment may be stated as follows: (1) A&P owed a duty to Wilson under general principles of tort law, (2) A&P is liable for an injury resulting from a defect it created which was imminently dangerous to third persons, (3) there was an implied warranty of fitness running from A&P to PH&T and its invitees, and (4) A&P is liable because the property was used by the public.

## DISCUSSION

■ In Indiana the tort of negligence is comprised of three elements: (1) a duty on the part of the defendant in relation to the plaintiff, (2) a failure on the part of the defendant to conform its conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff resulting from that failure. *Miller v. Griesel*, (1974) 261 Ind. 604, 308 N.E.2d 701.

■ The liabilities of an owner or occupier of property are generally settled in Indiana and may be summarized as follows: The owner or occupier of real estate owes

an active duty to an invitee or business visitor to maintain his property in a reasonably safe condition for the invitee. The status of an invitee is created by entrance upon the premises at the express or implied invitation of the occupier for some mutual commercial advantage. No such duty is owed to trespassers or licensees; they enter the premises at their own risk and use the property subject to its concomitant perils, except that the owner or occupier must refrain from wilfully or intentionally harming them after discovery of their presence. *Standard Oil Company of Indiana, Inc. v. Scoville*, (1961) 132 Ind.App. 521, 175 N.E.2d 711. However, since A&P at the time of the accident was neither an owner nor occupier of the premises, nor was Wilson its invitee but an invitee of PH&T, this body of authority does not answer the question in issue.

The question is whether any residual liability remains with a lessee after it quits possession and surrenders the premises to its lessor. According to the briefs, and confirmed by our own research, this is a case of first impression in Indiana, and only one case addressing this issue has been cited or reported in other jurisdictions.

In *Brock v. Rogers & Babler, Inc.*, (1975 Alaska) 536 P.2d 778, a plaintiff was injured in a gravel pit created by a lessee who had surrendered its lease prior to the accident. The Alaska Supreme Court said, at 781–82:

> "The general rule of law is that former possessors of land are not liable for injuries caused to others while upon the land by any dangerous condition, natural or artificial, which existed when the possession of the land was transferred. . .

> \* \* \* \* \* \*

While the principle here expressed refers to vendors of land, it is broad enough to cover a former lessee who had relinquished his possessory interest in the premises. The rationale is grounded in the general policy which seeks to limit liability to persons in possession and control of the land. One who lacks posses-

sion and control of property normally should not be held liable for injuries which he is no longer in a position to prevent. This principle applies with equal force to previous tenants, as well as to past owners of property." (Footnotes omitted.)

■ Examination of Indiana authorities involving the residual liability of lessors tends to confirm the statements in *Brock, supra.* Generally, a lessor cannot be held liable for negligence in failing to repair in the absence of a covenant requiring him to do so. *Town of Kirklin v. Everman*, (1940) 217 Ind. 683, 28 N.E.2d 73; *Stover v. Fechtman*, (1966) 140 Ind.App. 62, 222 N.E.2d 281; *Walker v. Ellis*, (1955) 126 Ind.App. 353, 129 N.E.2d 65. In *Stover, supra*, the rule was applied to defeat recovery by a guest of a lessee. In *Walker, supra*, the court made two exceptions to the general rule, where property was leased for a public purpose or where the lessor had created a nuisance. *Chrysler Corporation v. M. Present Company, Inc.*, (1974 7th Cir.) 491 F.2d 320, a diversity case applying Indiana law, followed the public purpose rule in a suit against a warehouse, but did not disturb the general rule.

■ No authority exists in Indiana as to the residual liability of a vendor. Authorities from other jurisdictions confirm the rule stated in *Brock, supra*. A grantor of premises in defective condition is generally not liable for an injury due to the defect but occurring after execution of the deed and delivery of possession to the grantee unless the grantor misleads the grantee into believing the premises are safe. This is true regardless of whether the injured person is the grantee or a third person to whom a duty of care is owed by the grantee. The new owner, upon assuming control and possession, becomes responsible for the safety of structures erected by his predecessors. 65 C.J.S. *Negligence* § 93 (1966); W. Prosser, Handbook of the Law of Torts § 64 (4th ed. 1971); *Anderson v. Cosmopolitan National Bank of Chicago*, (1973) 54 Ill.2d 504, 301 N.E.2d 296. Generally, liability remains on the grantor for

failure to disclose a known latent defect that he has reason to believe will not be discovered until such time as the grantee discovers it and has time to take precautions to prevent harm. 65 C.J.S. *Negligence* § 93; Prosser, *supra*, § 64; *Anderson, supra.*

The Restatement (Second) of Torts (1965) has adopted the above stated positions in transfers involving sale or lease:

"§ 352. Dangerous Conditions Existing at Time Vendor Transfers Possession

Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession."

"§ 353. Undisclosed Dangerous Conditions Known to Vendor

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

"§ 356. Conditions Existing When Lessor Transfers Possession: General Rule

Except as stated in §§ 357–362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession."

"§ 358. Undisclosed Dangerous Conditions Known to Lessor

(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

(a) the lessee does not know or have reason to know of the condition or the risk involved, and

(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

(2) If the lessee actively conceals the condition, the liability stated in Subsection (1) continues until the lessee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

■ As stated in *Brock, supra*, liability for injury ordinarily depends upon the power to prevent injury and, therefore, rests upon the person who has control and possession through ownership, lease, or otherwise. 65 C.J.S. *Negligence* § 90; *Walker, supra* ; Prosser, *supra*, § 57.

The above authorities demonstrate that the residual liabilities of a transferor of real estate are severely limited, the limitations based upon the rationale that neither the vendor nor the lessor has any right to enter or control the activities on the premises.

Wilson and PH&T do not cite authorities contrary to the ones discussed above, nor do they take issue with them. Instead, they

advance other concepts in the law which they contend govern the decision and create liability on the part of A&P under the facts in this case. These are discussed in turn.

1. *A&P owed a duty to Wilson on general principles of tort law.* Under this heading they argue that any negligence on the part of A&P which caused foreseeable injury is actionable. This argument simply ignores the entire body of law of premises negligence which has restricted liability. That body of law basically imposes liability upon the occupier and precludes the imposition of liability on persons not in possession except in certain specified areas. We reject this argument.

2. *A&P is liable for injury resulting from a defect it created which was imminently dangerous to third persons.* Here Wilson and PH&T advance the theory that since the premises were designed and constructed by PH&T pursuant to the specifications of A&P, A&P is liable under the rule that an independent contractor remains liable to third persons after work on premises has been completed and accepted by the owner where the construction was done in such a negligent manner as to be imminently dangerous. They cite *Holland Furnace Company v. Nauracaj,* (1938) 105 Ind.App. 574, 14 N.E.2d 339, and *Northern Indiana Public Service Co. v. Otis,* (1969) 145 Ind.App. 159, 250 N.E.2d 378, in support of that position. The rule enunciated in those cases, as recited, is an exception to the general rule that a contractor is discharged and no longer liable to third persons after the work has been accepted. As a general rule even a contractor is not liable to third persons if he builds the structure according to the specifications of the contractee or architect unless the specifications are obviously faulty. 21 I.L.E. *Negligence* § 54 (1959). The argument strains the fact situation here. A&P was neither an owner nor contractor, and the alleged negligence did not grow out of any defective construction of the building. A&P was a lessee and the fact that the building was built to its specifications does not alter that. We cannot agree with this contention.

3. *There was an implied warranty of fitness running from A&P to PH&T and its invitees.* Here Wilson and PH&T argue that the old concept of caveat emptor in the transfer of the possession of property has been abrogated by *Theis v. Heuer,* (1972) 264 Ind. 1, 280 N.E.2d 300, and *Barnes v. Mac Brown and Company, Inc.,* (1976) 264 Ind. 227, 342 N.E.2d 619. Those cases hold that there is an implied warranty of fitness for habitation running from the builder-vendor of homes to vendees. Here, again, the comparison escapes us. A&P never was the owner or builder but merely a lessee. Under *Theis, supra,* the warranties would seem to run from PH&T to A&P not from A&P to PH&T. No case has been cited which creates an implied warranty of fitness running from a lessee to a lessor, vendee to vendor, or contractee to contractor. We certainly know of none. We cannot accept this proposition either.

4. *A&P is liable because the property was used by the public.* Under this heading Wilson and PH&T advance the concept that where property is leased for a purpose which involves the admission of the public, the lessor is subject to liability for physical harm to persons who enter the land for that public purpose caused by a condition of the land existing at the time the lessee takes possession if the lessor knows of, or by the exercise of reasonable care could discover, the condition, has reason to expect that the lessee will admit the public before the land is put in a safe condition for the public's reception, and fails to exercise reasonable care to protect the public. They cite Restatement (Second) of Torts § 359, and *Walker, supra,* as authority, which authority does indeed recite the law in Indiana. However, we do not agree as to its applicability here. A lessor, at the time he leases a property, has such an interest in the property that he can control who leases it and for what purpose it is leased. He can repair it, rebuild it, and attach conditions to his lease to assure proper management of it. A lessee surrendering a lease has no control whatsoever over what the lessor does with his property upon the lessee's surrender of

the property. The thread through the law imposing liability upon occupancy of premises is control.

## DECISION

We are of the opinion that in fashioning a rule dispositive of this case, some analogy to the rules relating to the residual liability of a vendor or lessor is appropriate insomuch as the determinative event is the transfer of possession and control of the property. We do not say that the situations are identical. The liability of a lessee surrendering possession certainly could not exceed that of a vendor or lessor, and since a lessee has never had more than a limited interest in the property, it could be said that the residual liability would be less. But we need not decide that.

■ In this case the premises were built by PH&T upon plans and specifications approved by both PH&T and A&P, which plans, specifications, and construction included the opening for the stock conveyor. Insomuch as PH&T built the building and owns it, PH&T is charged with knowledge of the opening. A&P occupied the building in this condition and vacated it in this condition. A&P left the building in as good a state or condition as it received it, according to the terms of the lease, and with the opening still there. The opening was an integral part of the building as built by PH&T and was not constructed or created by A&P. Contrary to the arguments made by Wilson and PH&T, no affirmative duty or right existed on the part of A&P to alter the building or improve it. A&P simply vacated the building and left it in the charge of PH&T as the lease provided. The building was locked, the utilities were transferred to PH&T, and the keys were delivered to an agent of PH&T. The causative act leading to the injury of Wilson was the act of permitting Wilson and others to enter, unsupervised, into a vacant, locked, boarded-up, darkened building to wander about as they pleased. Wilson had no connection with A&P. He was an invitee of PH&T. PH&T, solely, had the power to control the admission of Wilson to the premises and to control the conditions under which he entered. As stated in the authorities discussed above, the power of control is determinative in cases of premises liability. We believe that the principles adopted in *Brock, supra,* are applicable to the facts in this case, and we so hold.

For the reasons stated above, we reverse the judgment against A&P and direct the trial court to enter judgment for A&P.

Reversed.

ROBERTSON, P. J., and CHIPMAN, J. (participating by designation), concur.