## Gilbert v. Conrail

*Tom P. Monteverde,* for plaintiffs.

*Philip E. Berens,* and *Janice Kolber,* for defendant Southeastern Pennsylvania Transportation Authority.

*D. Scott Morgan,* and *Janice Kolber,* for defendant Conrail.

KLEIN, *J.,* April 22, 1992—On July 23, 1985, David S. Gilbert, then a college student at the University of Pennsylvania, was tragically killed when he suddenly walked in front of a northbound SEPTA train while attempting to catch a southbound SEPTA train. The accident occurred at the Ambler Station on one of SEPTA's regional rail lines.

This court held:

(1) Gilbert was more than 50 percent negligent as a matter of law, and therefore this is one of those rare comparative negligence cases where a summary judgment motion should be granted;

(2) Summary judgment should be granted for Conrail, since it (a) only constructed the crossing at the direction of SEPTA, (b) turned the property over to SEPTA two years before the accident; and (c) if there were any defects, they were open and obvious;

(3) If SEPTA files a motion for summary judgment, it will be granted as well.

## MORE THAN 50 PERCENT NEGLIGENT

*By suddenly walking onto a train track without looking for trains, an adult is more than 50 percent negligent.*

David Gilbert left the parking lot on the eastern side of the tracks, entering the tracks through a cut-out opening in the fence that borders the tracks. He intended to board a southbound R5 train which would depart from the west side of the tracks. This cut out section opens onto a wooden permissive crossing that leads to the southbound train station. The wooden planks were constructed for the purpose of crossing the tracks.

According to the deposition testimony of Mrs. Gilbert, David Gilbert's mother, David Gilbert turned right immediately after passing through the cut-out fence opening, apparently to ultimately cross behind and board the southbound R5 commuter train. The R5 was stopped and boarding at the time David left the parking lot. After walking a few feet north, David turned to his left and stepped directly into the path of the northbound SEPTA train. From David's position, the view of the tracks in both directions was unobstructed. There was a two-sided warning sign posted near the cut-out section of the fence. On both sides, the sign clearly says "CAUTION STOP LOOK AND LISTEN." From

the situation described in the testimony of Mrs. Gilbert, it appears that David was late for his train. He sought to walk around the back of the southbound train and board it before it left. In his rush, he darted out onto the tracks without looking.

Plaintiffs, parents of the decedent, claim that the defendants were negligent in the construction of the wooden walkway referred to as the "permissive crossing." It was built prior to January 1, 1983. Defendants aver that the accident occurred as a result of the negligence of the plaintiff's decedent in failing to look before entering the track crossing.

Assuming there was negligence in the construction of the crossing, plaintiffs still cannot recover. The negligence on the part of those constructing the station would be in failing to have warning bells, failing to have a pedestrian crossing control, failing to have the train blow a whistle, etc. While there is a claim that there should have been an underpass or overpass, this is not persuasive because of the multitude of stations without such expensive construction and alternate methods of protection.

In any event, plaintiff cannot recover even where the defendants are negligent because David Gilbert was more than 50 percent comparatively negligent as a matter of law. Under the Comparative Negligence Law, a plaintiff cannot recover if the decedent is more than 50 percent negligent.

David S. Gilbert was an exceptional college student in a premedical program, not a little child. Every adult knows that it is hazardous to walk over a train track, and foolhardy and reckless to walk onto a track area

of a busy regional rail line without as much as looking to make sure that the track is clear. This gross negligence on the part of David Gilbert was the prime cause of this accident. The decedent was more negligent than the combined negligence of the two defendants. No reasonably jury could find David Gilbert less than 50 percent negligent given this set of facts. This accident could have easily been avoided had the decedent heeded the warning posted on the caution sign or used common sense before stepping onto the tracks.

It is true that it is a rare situation where it can be said the plaintiff is more than 50 percent negligent as a matter of law. However, it has been recognized that such situations do exist. A case holding there was not sufficient evidence of greater than 50 percent negligence pointed this out. *Peair v. Home Association of Enola Legion No. 751,* 287 Pa. Super 400, 430 A.2d 665 (1981).

Such were the circumstances in a case in which I was the trial judge, which was affirmed by the Commonwealth Court. In *Hillerman v. PennDOT,* 141 Pa. Commw. 14, 595 A.2d 204 (1991), a woman was crossing a South Broad Street intersection she knew well. Although the light turned yellow while she was crossing, she stepped into a lane of moving traffic while her view was obscured by a panel truck in the lane closer to her. The Commonwealth Court held that even were PennDOT or the city of Philadelphia negligent because of quick timing of the lights, Ms. Hillerman's negligence was more than that combined negligence as a matter of law and she could not recover. As in the *Hillerman* case, the injured party here was very familiar with the

area in which the accident occurred. Anyone with average intelligence even without the decedent's knowledge of the area would be aware of the dangers present. These are the very same dangers that ultimately resulted in his death. The decedent's disregard for these dangers was the direct cause of his own death.

Other cases have held that a person cannot ignore an obvious danger. In *Ott v. Unclaimed Freight Co.,* 395 Pa. Super 483, 577 A.2d 894 (1990), Henrietta Ott was crossing a parking lot and saw ice on the ground. She had an alternate path, but continued and slipped on the ice. The court upheld the summary judgment ruling of the court below, couching it in terms of assumption of the risk, although it could just as easily been termed more than 50 percent comparative negligence. As applied to the instant case, David Gilbert knew there was an unprotected crossing and it was highly dangerous to cross without looking. A brief pause by David Gilbert to look for oncoming trains would have prevented his death. No matter how one phrases it, his negligence was greater than that of the defendants. Plaintiffs cannot recover.

## SUMMARY JUDGMENT FOR CONRAIL

*Summary judgment should be granted for Conrail, since it (a) only constructed the crossing at the direction of SEPTA, (b) turned the property over to SEPTA two years before the accident; and (c) if there were any defect, it was open and obvious.*

The undisputed evidence revealed through discovery shows that whether or not Conrail constructed the crossing, it was no longer in control of the line after 1983.

The complaint against Conrail only alleges that Conrail possessed and controlled the Ambler Station from 1979 through 1983.

Even if Conrail did work on the crossing, it did it when the station was owned by SEPTA, and did the work at SEPTA's direction based on a SEPTA design. The accident occurred more than a year after Conrail had anything to do with the station. It is clear that Conrail was not in possession of the property at the time of Gilbert's death.

Although there are some circumstances when a contractor may be responsible for changes after that contractor is out of possession of the property, that only occurs when the owner of the land is unlikely to discover the defect. See Restatement (Second) of Torts, §385(c).

That makes sense. In general, after a contractor leaves a property, or after someone sells property, the contractor/seller has no right to enter the property to make changes. The rationale of the Alaska Supreme Court makes sense for Pennsylvania as well: "One who lacks possession and control of property normally should not be held liable for injuries which he is no longer in a position to prevent." *Brock v. Rogers & Babler Inc.*, 536 P.2d 778, 782 (Sup. Ct. Alaska, 1975).

Suppose in 1985, engineers from Conrail came to SEPTA and said, "We don't think the crossing we built at Ambler is safe—we think you need crossing gates or an underpass." SEPTA would be under no obligation to follow their advice.

Moreover, SEPTA was in the business of running commuter railroads before and after 1983, and certainly would have the same expertise in evaluating the safety

of a crossing as that possessed by Conrail. There is no reason to hold one experienced transportation company liable for an obvious condition after they turned all control over to another transportation company.

The Pennsylvania cases support this viewpoint. The cases holding the contractor liable for defects after the contractor has left all address situations where the owner is not likely to discover the defect.

For example, in *Masciangelo v. Dolente,* 222 Pa. Super 368, 295 A.2d 98 (1972), the plaintiff was hurt by a tree root that a contractor improperly buried rather than removing. The court adopted the black letter law of the Restatement 2nd of Torts, §385. The court cited comment (c) of that section as "specifically applicable." Comment (c) provides that a contractor who "turns over the land with knowledge that his work has made it dangerous *in a manner unlikely to be discovered by the possessor* is subject to liability both to the possessor, and to those who come upon the land...." Any defect created by Conrail would certainly be known and obvious to SEPTA, so this section would not apply to the circumstances of the instant case.

The other cases also turn on the fact that the contractor created a danger unlikely to be discovered by the possessor of the land.

*St. Clair v. B&L Paving Co.,* 270 Pa. Super. 277, 411 A.2d 525 (1979), involved a contractor who negligently left a six-inch drop off between the side of the road and the shoulder of the road. The plaintiff lost control after hitting the drop off. Although the contractor was liable to the plaintiff, this was one section

of a long highway, and this defect could be missed by the Commonwealth inspectors.

*Krisovich v. John Booth Inc.,* 181 Pa. Super. 5, 121 A.2d 890 (1956), involves a latent condition that was unknown to the current owner of the land or the person injured. Krisovich was on his way home from a bakery shop when the dirt path on which he was walking suddenly collapsed under him. Neither the plaintiff nor the owner could know of the negligent back fill.

In *Prost v. Caldwell Store Inc.,* 409 Pa. 421, 187 A.2d 273 (1963), Margaret Prost slipped and fell on a terrazzo-paved entrance way to the Caldwell Store Inc. department store in Washington, Pa. Caldwell's joined the Kaplan Company, allegedly for negligently installing a slippery floor. The Supreme Court reversed a nonsuit granted in favor of Kaplan Company, saying it was for the jury to determine if Kaplan was responsible for "its lurking dangers." The court therefore believed it was a jury question as to whether the store should have know of the danger—the "lurking" danger.

*Strothman v. Houggy,* 186 Pa. Super. 638, 142 A.2d 769 (1958), is not on point. This also involved a "hidden" defect—a mantle that was not properly secured to a wall and collapsed when three-year-old Carol Strothman climbed up on it. Although Carol's parents had signed a clause exculpating the Houggy's (builders and landlords), the court said that the Houggy's could be liable as builders although not as landlords. Again, the contractor was liable because the defect was not observable.

Assuming that Conrail was ever in possession, it had been out of possession of the station for more

than a year before the accident. It can only be liable for non-discoverable or latent dangers. It is not liable for SEPTA's failure to remedy an obviously unsafe condition. The condition was such that the danger would be obvious to SEPTA as well as to anyone crossing the tracks. Therefore, summary judgment was properly granted to Conrail for this reason as well.

## SUMMARY JUDGMENT FOR SEPTA

*If SEPTA files a motion for summary judgment, it will be granted as well.*

Many of the arguments relating to the summary judgment motion based on the plaintiff being more than 50 percent negligent as a matter of law were discussed at the oral argument and related to the 1991 Superior Court case of *Hillerman v. PennDOT,* 141 Pa. Commw. 14, 595 A.2d 204 (1991). Since the court's ruling was appealed by plaintiff, SEPTA has not yet filed a motion for summary judgment based on the determination that Mr. Gilbert was more than 50 percent negligent as a matter of law. It is noted, however, that the reasoning applicable to this portion of this opinion would also be applicable to SEPTA's position.

Therefore, the plaintiff was more than 50 percent negligent as a matter of law; Conrail is not responsible for an obvious danger more than a year after completing construction; and summary judgment would be granted for SEPTA as well. The summary judgment was properly granted to Conrail.