William E. BRENT, Appellant,

v.

UNICOL, INC., Appellee.

No. S–8178.

Supreme Court of Alaska.

Dec. 24, 1998.

Steven L. Hempel, Choate Hempel, Juneau, for Appellant.

Eric P. Gillett, Preg, O'Donnell, Sargeant & Gillett, PLLC, Seattle, Washington, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Under the majority rule, reflected in Restatement (Second) of Torts § 385 (1965), even after a property owner accepts a contractor's work, the contractor may be liable to third parties injured by a dangerous condition the contractor created on the property. William Brent sued Unicol, Inc., an independent contractor, after he fell into a hole that Unicol left on the worksite. The superior court granted summary judgment to Unicol. We must decide whether Unicol can be held

liable even though Brent was injured after Unicol had left the worksite and the property owner had accepted Unicol's work. Because we hold that it can, we reverse Unicol's summary judgment and remand.

## II. *FACTS AND PROCEEDINGS*

ARCO Alaska, Inc. hired Unicol as an independent contractor to perform excavation and install sheet piling as part of a bridge construction project on the North Slope. Unicol drove sheet piling into the ground in squares and then excavated the interior of the squares in preparation for construction of bridge supports. The excavation was approximately twenty feet deep. Although Unicol placed "rig mats" over the excavated squares before it left the work site, there were gaps along the edges because the sheet piling walls, which extended above the ground, were "S" shaped and the mats did not cover the walls completely. After Unicol completed its work, ARCO inspected Unicol's worksite with a Unicol employee and accepted Unicol's work. Unicol left the worksite on March 14, 1994.

H.C. Price, another independent contractor, began installing pipe in the causeway next to Unicol's work site. Approximately three weeks later, William Brent, an employee of H.C. Price, fell into a hole between an excavation wall and a rig mat, and was injured. The hole was unmarked and was allegedly covered by snow.

Brent sued Unicol for "negligence in failing to mark the holes, cover the holes, or otherwise provide notice and warning of their existence." Unicol moved for summary judgment, arguing that it did not owe Brent a duty of care because Unicol was no longer in possession of the work site when Brent was injured and because ARCO had accepted Un-

icol's work. Unicol also argued that the evidence showed that Unicol had marked the holes or taken other safety measures before it demobilized and that someone other than Unicol must have removed the markings. The superior court granted summary judgment to Unicol because it concluded that Unicol owed Brent no duty of care. Brent appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

■ "In reviewing a grant of summary judgment, this court must determine whether any genuine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law."[1] We review de novo an order granting summary judgment.[2]

### B. *Did Unicol Owe Brent a Duty of Care?*

■ The superior court relied on *Brock v. Rogers & Babler, Inc.*, 536 P.2d 778 (Alaska 1975), to conclude that Unicol owed no duty to Brent once it had left the work site because, the *Brock* court reasoned, "former possessors of land are not liable for injuries caused to others while upon the land by any dangerous condition, natural or artificial, which existed when the possession of the land was transferred."[3] Brent attempts to distinguish *Brock* by arguing that the danger in that case was open and obvious while the danger in this case was latent. Unicol does not address Brent's argument, but argues that *Brock* controls because "a contractor for all intents and purposes is in fact the possessor of the property."

*Brock* and the Restatement (Second) of Torts § 352 (1965),[4] on which *Brock* is based,

---

1. *Nielson v. Benton*, 903 P.2d 1049, 1051–52 (Alaska 1995) (citing *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992)).

2. *See id.* at 1052 (citing *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 (Alaska 1994)).

3. *Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 781 (Alaska 1975).

4. Restatement (Second) of Torts § 352 (1965), addressing the liability of the vendor of land, states:

   Except as stated in Sec. 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

do not apply here. Unicol was not the owner or lessee of the work site, and Brent's negligence claim is not based on Unicol's status as a former possessor of land, but on its status as the independent contractor which allegedly created a dangerous condition on the land. It was error to conclude that *Brock* governed.

Brent's case is instead governed by the Restatement (Second) of Torts § 385 (1965), which discusses when an independent contractor can be liable for injuries resulting from dangerous conditions it creates:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.[5]

Section 385 reflects the majority rule that "a contractor is held to the standard of reasonable care for the protection of third parties who may foreseeably be endangered by his negligence, even after acceptance of the work by the contractee." [6]

Unicol recognizes in its brief that § 385 applies to this case but argues that § 385, Comment c supports the conclusion of no liability. Unicol emphasizes the part of Comment c that states:

> a servant or contractor who turns over the land with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor is subject to liability both to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in its vicinity.[7]

Unicol argues that this statement "dovetails with the reasoning of this court in *Brock* holding that a former possessor is not liable when it is no longer in possession and control." Unicol argues that it is therefore not liable because "the injury occurred after Unicol left the site and *after Unicol disclosed to ARCO the conditions and potential hazards at the site.*"

Although Comment c sets out an exception to § 385, it does not go as far as Unicol contends. Under Comment c, a contractor who turns the site over to the owner may discharge its duty to third persons if the condition which harms the third person is either (1) fully disclosed to the owner, or (2) fully recognized by the owner even if not disclosed. Comment c refers to § 388, Comment n for the discussion of this exception. Comment n states in part:

> In all such cases the question may arise as to whether the person supplying the chattel is exercising that reasonable care, which he owes to those who are to use it, by informing the third person through whom the chattel is supplied of its actual character.[8]

Comment n requires the party creating the danger to act reasonably in ensuring not only that the property owner is informed but that other potential victims will be aware of their peril. Unicol has not discussed, except in the briefest terms, why disclosure of the condition to ARCO must satisfy § 385, and has not discussed § 388 at all.

■ Even assuming that the rule Unicol proposes is correct, however, Unicol has not established that it fully disclosed to ARCO the condition—the gap between the rig mats and the edge—and it has not established that ARCO fully recognized the nature of the hazard Unicol's work potentially posed. Al-

**5.** Restatement (Second) of Torts § 385 (1965).

**6.** *Johnson v. Oman Constr. Co.*, 519 S.W.2d 782, 788 (Tenn.1975); *see also Minton v. Krish*, 34 Conn.App. 361, 642 A.2d 18, 21 (Conn.App. 1994); *Kragel v. Wal–Mart Stores, Inc.*, 537 N.W.2d 699, 707 (Iowa 1995); *Quinn v. Moore*, 292 A.2d 846, 851 (Me.1972); *Council of Co-Owners Atlantis Condo., Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 517 A.2d 336, 341–44 (Md.1986); *McDonough v. Whalen*, 365 Mass. 506, 313 N.E.2d 435, 439 (Mass.1974); *Kapalczynski v. Globe Constr. Co.*, 19 Mich.App. 396, 172 N.W.2d 852, 853–56 (Mich.App.1969).

**7.** Restatement (Second) of Torts § 385, cmt. c (1965).

**8.** Restatement (Second) of Torts § 388, cmt. n (1965).

though some evidence would permit an inference that ARCO was informed of the condition by a walk-around inspection it allegedly conducted with Unicol, a contrary inference could be drawn from evidence that the protective snow berm Unicol claimed it left overlapped the edge and covered part of the rig mat. If the berm did in fact overlap the edge and cover part of the mat, it would have obscured the gap from ARCO's observation, preventing ARCO from recognizing the dangerous condition.

Furthermore, it is not enough that ARCO arguably should have discovered the allegedly hazardous condition during its walk-around inspection. Comment c of § 385 refers to § 396 in discussing whether the contractor's liability is affected by the fact that the employer, as the possessor of the land, is under a duty toward the person injured to discover the defect and make the condition safe or warn such person of the existence of the danger. Restatement (Second) of Torts § 396 (1965) provides: "A manufacturer of a chattel is subject to liability ... although the dangerous character or condition of the chattel is discoverable by an inspection which the seller or any other person is under a duty to the person injured to make." Any duty on ARCO to inspect the site and detect the condition does not automatically relieve Unicol of liability.

Under the majority rule expressed in § 385, then, Unicol may be liable to Brent. But some jurisdictions have adopted a minority position. In those jurisdictions, a contractor is immune from liability under the "completion and acceptance doctrine": " '[W]here the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract.' "[9] This historically was the common law rule, but it has been so riddled with exceptions that most courts have now adopted the modern rule reflected in Restatement (Second) of Torts § 385 (1965).[10] Courts adopting the modern rule of liability have recognized that the justifications for the completion and acceptance doctrine were based on the lack of privity between the contractor and the injured third party.[11] Modern tort law following the watershed case of *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (N.Y.1916), has eschewed the requirement of privity and has found a duty of reasonable care whenever the harm was foreseeable.[12]

We adopt the majority rule that allows liability for independent contractors under the terms of § 385 of the Restatement (Second) of Torts. We have previously "demonstrated a dissatisfaction with strict privity limitations in resolving questions of jobsite liability."[13] We have also allowed liability against chattel manufacturers who are not in strict privity with those injured by a condition of the chattel.[14] The majority rule allowing liability for contractors is consistent with Alaska tort law.

Because we adopt the principle set out in § 385, we cannot affirm Unicol's summary judgment on the theory that it owed no duty to Brent.

## C. Did Unicol Establish that There Were No Disputed Material Facts on the Issue of Negligence?

Unicol argues that we can affirm the summary judgment on Unicol's alternative theo-

9. *Tennyson v. Plum Creek Timber Co., L.P.,* 73 Wash.App. 550, 872 P.2d 524, 529 (Wash.App. 1994) (quoting *Andrews v. Del Guzzi,* 56 Wash.2d 381, 353 P.2d 422, 426 (Wash.1960)).

10. *See* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 104A (5th ed.1984).

11. *See, e.g., Pierce v. ALSC Architects, P.S.,* 270 Mont. 97, 890 P.2d 1254, 1261–62 (Mont.1995) (discussing the obsolescence of privity concerns in contractor liability cases).

12. *See* Keeton § 104A.

13. *Parker Drilling Co. v. O'Neill,* 674 P.2d 770, 775 (Alaska 1983) (holding that there is a common law duty to provide a safe work site running to whoever supplies and controls the work site).

14. *See Clary v. Fifth Ave. Chrysler Ctr., Inc.,* 454 P.2d 244 (Alaska 1969) (holding that manufacturer can be held strictly liable in tort for personal injuries attributable to the manufacturer's defective goods).

ry that it was not negligent because the "uncontradicted evidence demonstrates that Unicol installed rig mats, snow berms and reflective markers when it finished its work." Brent argues that Unicol failed to establish the absence of genuine issues of material fact about the condition of the site near the hole when Unicol left the site.

■ Although the superior court mentioned the lack of evidence of negligence, it does not appear to have based the summary judgment on this argument. We consider this issue, however, because we may uphold a grant of summary judgment on alternative grounds.[15]

Brent correctly observes that negligence issues generally should be resolved at trial rather than by summary determination. We noted in *Webb v. City and Borough of Sitka,* 561 P.2d 731, 735 (Alaska 1977), that the reason for this rule is

> [b]ecause of the elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in the light of all the circumstances of the case. If reasonable minds could draw different inferences and reach different conclusions from the facts the issue must be reserved for trial.[16]

Both parties agree that the condition of the work site when Unicol demobilized on March 14, 1994, is the central issue. Unicol argues that it took safety measures, including the installation of rig mats, snow berms, and reflective markers. It supports this assertion with the affidavits of Gary Abbas, the ARCO employee who inspected the site, and David Thomas, the Unicol engineering and safety manager who also inspected the site.

Unicol also asserts that Brent has "no evidence that Unicol failed to take these steps."

Unicol has referred us to credible evidence that the safety measures were taken, and Brent has pointed to no evidence directly establishing the absence of safety measures at the work site on March 14, 1994. Nonetheless, sufficient evidence exists to support an inference that Unicol left the worksite in a dangerous condition.[17] A reasonable person could permissibly infer that Unicol failed to mark the hole as it says it did based on the following: (1) evidence that the hole was completely hidden on the day of the accident, only about three weeks after Unicol left; (2) testimony of the H.C. Price Safety Manager that H.C. Price did no snow removal around the hole (implying either that Unicol never built a berm or that a snow berm was not a lasting safety measure); (3) testimony of the H.C. Price foreman that he did not see any flagging or markings around the holes before it snowed and before the accident, but after Unicol demobilized; (4) testimony of a Unicol employee who asked during demobilization about the holes left after the rig mat was in place, and was told "not to worry about it"; (5) inconsistencies in David Thomas's testimony on the details of the safety measures taken; and (6) the fact that Gary Abbas's affidavit, submitted after Thomas testified, tracks the testimony of Thomas and Unicol president John C. Ellsworth, who also testified that safety measures were taken. Unicol attacks Brent's evidence, arguing that each piece, in and of itself, does not raise a genuine issue of material fact.[18] But the evidence as a whole permits reasonable persons to infer that Unicol failed to take proper measures.

Furthermore, a trier of fact could also conclude that any safety measures Unicol did take were inadequate even assuming it con-

---

15. *See Maddox v. River & Sea Marine, Inc.,* 925 P.2d 1033, 1039 (Alaska 1996).

16. *Webb v. City and Borough of Sitka,* 561 P.2d 731, 735 (Alaska 1977) (citations omitted).

17. *See Alaska Rent–A–Car, Inc. v. Ford Motor Co.,* 526 P.2d 1136, 1139–40 (Alaska 1974) (holding that summary judgment is inappropriate where a jury might fairly infer negligence from the evidence).

18. There was also evidence that the diary Abbas used to document his work contained no entry concerning the alleged inspection of the Unicol site. Unicol argues that the diary would be inadmissable because it has not been authenticated and contains hearsay. We do not address the admissibility of the diary because summary judgment would still not be appropriate even if the diary were not considered.

structed a snow berm and put reflective wands on the edges of the cell. First, there was no evidence permitting, much less requiring, a conclusion that a snow berm and corner reflectors were adequate as a barrier or warning, or satisfied industrial safety standards. Second, assuming that Unicol installed a snow berm and reflectors, the evidence suggests there were neither berms nor reflectors in place when Brent fell only about three weeks after Unicol left the work site. Measures so ephemeral are inferentially inadequate. A permissible inference that the measures were inadequate prevents us from concluding that, as a matter of law, Unicol fully discharged its duty of care.

We cannot affirm on these alternative grounds because Unicol has not demonstrated the absence of genuine issues of material fact.[19]

## IV. CONCLUSION

We REVERSE the superior court's grant of summary judgment and REMAND for further proceedings.

---

**19.** Unicol also disputes the admissibility and relevance of an ARCO Safety Handbook. We do not address the admissibility of the handbook. It is potentially relevant to the applicable standard of care. The issue of the handbook's admissibility is not dispositive of this appeal.