**Bernice ZIMMERMAN, Defendant-Appellant,**

**v.**

**Jean MOORE and Davey Moore, Plaintiffs-Appellees.**

**No. 1–1081A302.**

Court of Appeals of Indiana, First District.

Nov. 3, 1982.

Rehearing Denied Dec. 17, 1982.

Robert L. Hartley, Jr., C. Wendell Martin, Martin & Hartley, Indianapolis, for defendant-appellant.

W.F. Conour, Conour & Davis, Indianapolis, Delbert H. Brewer, Brewer & Lowe, Greencastle, for plaintiffs-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Bernice Zimmerman (Zimmerman) appeals a judgment entered in the Putnam Circuit Court upon a jury verdict in favor of plaintiffs-appellees Jean Moore and Davey Moore (Moores) in a premises liability action seeking damages for injuries sustained when Jean Moore fell on the back steps and seriously fractured her left wrist. The jury awarded the Moores $57,200.

We reverse.

## STATEMENT OF THE FACTS

On February 10, 1975, after inspecting the premises, Moores orally leased a three-room single family residence from Zimmerman for $80 per month. Zimmerman was not in the business of renting property, but owned this residence, her former home, by virtue of a divorce settlement with a prior husband. Upon her remarriage she occupied her new husband's home, and Zimmerman's property was rented to Moores on a month to month basis. The rear steps, the subject of this litigation, were replaced in 1973. The steps ascended to the bottom of the rear door without the benefit of a landing, and, when opened, the back door swung out over the steps. A rail existed only on one side of the rear stairway. There was testimony that because of the foregoing design, the steps violated various regulatory sections of the One and Two Family Dwelling Code (Code) of the Administrative Building Council (ABC) promulgated by that body as authorized in Ind.Code 22–11–1–10.

There was evidence that after the inception of the lease, Moores considered the steps dangerous and requested Zimmerman to repair them. She agreed, and said the steps would be fixed as soon as her husband was feeling better. The steps were never repaired. On December 23, 1975, while attempting to mount the steps and enter the rear door, Jean Moore fell and suffered a comminuted fracture of her lower left arm.

Moores brought this action, she for her personal injuries, he for loss of consortium, alleging three separate legal theories: (1) negligence (including negligence *per se*), (2) breach of covenant to repair, and (3) breach of an implied warranty of habitability.

The trial court, after relevant instructions, submitted the case to the jury on all three theories. The jury returned a single verdict for Jean Moore and a single verdict for Davey Moore, without any indication upon which theory the verdicts were entered.

Zimmerman presents a shopping list of 25 assignments of error. Since we reverse, we will address only two errors. The first and principal issue assigned by Zimmerman is contained in eight assignments of error, all of which concern the doctrine of implied warranty of habitability. The second issue concerns the Court's Final Instruction No. 11 on negligence *per se.* The jury, over Zimmerman's objection, essentially was instructed, in the Court's Final Instructions No. 1 and 21, that the oral lease contained an implied warranty of habitability, a breach of which would give rise to liability on the part of Zimmerman. The jury was also instructed by Moores' Instruction No. 11, over Zimmerman's objection, that the provisions of the building codes promulgated by the ABC are applicable to single-family residences, and the instruction concluded with the following statement:

> "If you find that either party violated any or all of these provisions of the one and two family dwelling code and that such violation or violations caused the plaintiffs injury then you may find negligence *per se* on the part of the defendant or contributory negligence *per se* on the part of the plaintiff without any additional proof of negligence."

## ISSUES

The issues may be stated as follows:

I. Does an implied warranty of habitability apply to the rental of a single-family dwelling by an owner not in the business of renting; and

II. Is the violation of the building code promulgated by the ABC, an administrative agency, negligence *per se.*

## DISCUSSION AND DECISION

As a preliminary matter we must discuss the standard of review on appeal relative to erroneous instructions and instructions on an invalid theory of recovery.

An erroneous instruction will be presumed to have influenced the result in a trial unless it appears that the verdict could not have been different under proper instructions. *Probst, Receiver v. Spitznagle,* (1939) 215 Ind. 402, 19 N.E.2d 263. Stated in a different manner, it must be assumed that an instruction which misstates the law has influenced the result at trial unless it appears from the evidence or record that the verdict under a proper instruction could not have been different. *P–M Gas & Wash Company, Inc. v. Smith,* (1978) Ind.App., 383 N.E.2d 357. It has further been stated that the giving of an erroneous instruction is grounds for reversal only where the jury's verdict could have been predicated upon the instruction and we will look to see if the appellant has demonstrated harm. *Lewis v. Davis,* (1980) Ind.App., 410 N.E.2d 1363. To determine whether the jury was misled we must examine the evidence and record to see if under proper instructions the verdict could have been different. *Pardue v. Seven-Up Bottling Co. of Indiana,* (1980) Ind.App., 407 N.E.2d 1154. Giving a bad instruction is not cured by giving a correct instruction. *Deckard v. Adams,* (1965) 246 Ind. 123, 203 N.E.2d 303; *Childs v. Rayburn, Administrator,* (1976) 169 Ind. App. 147, 346 N.E.2d 655. It is not the province of appellate review to speculate on whether a jury reached the decision they did on the proper instructions given or the improper ones. *See Pardue, supra.*

*Issue I. Implied warranty of habitability*

As already stated, the Moores proceeded upon three separate theories, (1) negligence, (2) breach of covenant to repair, and (3) breach of an implied warranty of habitability. We first observe that Issues 1 and 2 are a part of the same theory and will not be discussed in this opinion. We would note, however, that as was stated in *Stover v. Fechtman,* (1966) 140 Ind.App. 62, 222 N.E.2d 281, in order to recover on a theory of negligence a plaintiff lessee must show a duty on the part of the lessor and a breach of that duty. Thus, a lessee can recover by showing that the landlord had expressly covenanted to repair the leased property at the inception of the lease.

Zimmerman objected to the trial court's giving two conflicting and contradictory instructions on the breach of an implied warranty of habitability, contending that this doctrine is not a proper theory of recovery in this case since "Indiana does not recognize any implied warranty of habitability with respect to the rental of a one or two family dwelling." Zimmerman pointed out in her objection to the trial court that the Court's Final Instruction No. 1 misstated the law in providing that an implied warranty of habitability extended to both patent and latent defects existing at the inception of the lease. Also, Zimmerman objected to the court's giving Final Instruction No. 21, in which the court instructed the jury that only "latent" defects at the inception of the lease are covered by the implied warranty doctrine. This instruction, as Zimmerman argues, directly conflicts with what the court told the jury in Final Instruction No. 2. As a result, Zimmerman contends the jury was misled by the court's having given contradictory and confusing instructions on a theory of recovery which does not apply to the facts of this case under any circumstances.

Generally, the traditional view of the landlord's liability for tortious injuries to a tenant is as follows: where the tenant's injuries are caused by *hidden* defects known to the landlord but *unknown* to the

tenant, a landlord can incur liability if he has failed to give notice of the defects to the tenant. *Stover, supra.* However, no liability accrues to the landlord where he is without knowledge of the latent defect. Furthermore, a landlord is not liable for personal injuries to a tenant for defective premises unless he expressly agrees to repair and is negligent in doing so. *Hunter v. Cook,* (1971) 149 Ind.App. 657, 274 N.E.2d 550. *See* W. Prosser, Handbook of the Law of Torts § 63 (4th ed. 1971). A landlord is also liable for affirmative acts of negligence. Contributory negligence and assumption of risk are available to a landlord as defenses, and this is so even where the landlord contracted to repair and did not repair. *Coleman v. DeMoss,* (1969) 144 Ind. App. 408, 246 N.E.2d 483; *Stover, supra; See* 18 I.L.E. *Landlord and Tenant* § 251 *et seq.* (Supp.1981). The *Restatement (Second) of Torts* (1965) § 358, states the rule that only known undisclosed latent defects are actionable. As the Indiana Supreme Court further stated in *Stover, supra,* 222 N.E.2d at 284, where the defective steps were in plain view, "[t]hey were not the type defect which a lessee could not reasonably be expected to discover."

In *Great Atlantic & Pacific Tea Company, Inc. v. Wilson,* (1980) Ind.App., 408 N.E.2d 144, we analyzed the traditional rules on premises negligence and refused to apply an implied warranty of habitability to the surrender of a lease. There we noted that much similarity exists between vendors and lessors in considering the residual liability of a transferor, whether the transfer is by sale or lease. The triggering factor is the transfer of possession and control. One who lacks possession and control of property normally should not be held liable for injuries which he is no longer in a position to prevent. *Wilson, supra.*

We shall now examine the implied warranty of habitability doctrine as it has been developed in the case law on sales. In *Theis v. Heuer,* (1972) 264 Ind. 1, 280 N.E.2d 300, the court found an implied warranty of habitability extending from a builder-vendor of a new home to a purchaser. In *Barnes v. MacBrown and Company, Inc.,* (1976) 264 Ind. 227, 342 N.E.2d 619, an implied warranty was extended to a second and subsequent purchaser from the builder-vendor, but that case expressly limited the implied warranty doctrine to *latent* defects which are not discoverable by subsequent purchaser's reasonable inspection and become manifest after the purchase. The *Barnes* court, quoting *J.I. Case Co. v. Sandefur,* (1964) 245 Ind. 213, 222, 197 N.E.2d 519, stated that "The emphasis is on the duty to avoid *hidden defects* or concealed dangers." The court in *Barnes* held that no distinction existed, so far as warranty was concerned, whether the loss was economic or from personal injury, but the burden was on the claimant to show that the defect had its origin and cause in the original builder-vendor. Thus, the court concluded by stating that "[t]o the extent discussed above, we do not see that the sale of real estate should be treated differently from the sale of personal property." 342 N.E.2d at 621.

The Court of Appeals in *Vetor v. Shockey,* (1980) Ind.App., 414 N.E.2d 575, 577, rejected an attempt to apply the doctrine of an implied warranty of habitability to the sale of a used home by a non-builder-vendor. The court stated that "[t]he refusal to extend the doctrine is seemingly premised on the idea that in the sale of *used* housing, the vendor usually has no greater expertise in determining the quality of a house than the purchaser." The *Vetor* court quoted cases from other jurisdictions, however, that have extended the implied warranty doctrine to purchasers of used homes from non-builder-vendors subject to the exclusion of known or discoverable defects, and to the purchaser's justifiable expectations. The court concluded by stating,

> "Further, the Supreme Court of Wyoming, in discussing the abandonment of *caveat emptor,* remarked in dicta, 'We do not include used housing in our holding but visualize that circumstances may require consideration of some sales as included.' *Tavares v. Horstman* (Wyo.1975) 542 P.2d 1275, 1282. While we too recognize that there may be some situations

which necessitate the expansion of the implied warranty of habitability to used housing, we decline to extend the doctrine to the case before us. We are not convinced that a non builder-vendor should bear the risk of latent defects. While the public interest may well be served by placing repair or replacement costs of a new home on the responsible vendor-builder who created the defect and is in a better economic position to bear the cost than the purchaser, these policy considerations are inapplicable where the house is an older one and the seller is not its builder. As for defects *known* to the vendor of an older home at the time of sale, the tort theories of misrepresentation or fraudulent concealment are alternatives open to the unknowing buyer. *E.g., Wilhite v. Mays* (1976) 140 Ga.App. 816, 232 S.E.2d 141, affirmed, (1977) 239 Ga. 31, 235 S.E.2d 532 (seller of a four year old home was liable for damages where he fraudulently misrepresented the condition of a septic system)."

414 N.E.2d at 577.

The most recent case on the subject is *Breezewood Management Company v. Maltbie,* (1980) Ind.App., 411 N.E.2d 670. In a suit for rent reduction because the rental apartment in an old converted home (four apartments in one building) did not conform to the minimum housing code of the City of Bloomington, we held the plaintiff had a reasonable expectation that the housing would conform. When it did not conform, an implied warranty of habitability was breached. However, we severely limited that holding by stating:

"At the same time we note our commitment to support the reasonable expectations of contracting parties whenever possible. That is to say, if parties enter into a lease outside of the purview of a local housing ordinance or code, and the premises are not substantially other than what they appear to be, this court will treat that lease agreement as it does any other contract. Thus, if a farmer rents a hovel, and a renter wants to rent it 'as is,' we will not interfere with the parties' reasonable expectations by allowing the renter to subsequently file an action against the former for breach of certain implied warranties of habitability. One who, 'with open eyes,' rents a hovel cannot later expect and sue for the Waldorf Astoria."

411 N.E.2d at 675.

The inevitable comparison of real property transfers to sales of personal property and warranties under the U.C.C. and strict liability under § 402A of the *Restatement (Second) of Torts* was made in *Theis, supra; Barnes, supra; Vetor, supra,* and other cases cited therein. However in sales of personalty challenged under the U.C.C. or under § 402A of the *Restatement (Second) of Torts,* where warranty and strict liability are involved, such theories are not applicable unless the seller is a merchant, manufacturer or one engaged in the business. There is no warranty or strict liability for occasional sales by non-merchants or non-manufacturers. *Royal Business Machines, Inc. v. Lorraine Corp.,* (7th Cir.1980) 633 F.2d 34; *Richards v. Goerg Boat and Motors, Inc.,* (1979) Ind.App., 384 N.E.2d 1084; *see also, Stapinski v. Walsh Construction Co., Inc.,* (1979) Ind., 395 N.E.2d 1251.

Moores rely primarily on caselaw from other jurisdictions such as *Javins v. First National Realty Corporation,* (D.C.Cir.1970) 428 F.2d 1071; and *Boston Housing Authority v. Hemingway,* (1973) 363 Mass. 184, 293 N.E.2d 831, which found implied warranties of habitability in leases in large city apartment complexes operated and owned by professional landlords who were in the business of real estate development and ownership. Those cases, discussed in *Breezewood, supra,* focused on the tenant's having no real means of inspection or control over his apartment and its supporting facilities.

Two principal philosophical justifications supporting the implied warranty doctrine or § 402A, strict liability in tort, are advanced in the case law and review articles. First, the requirement of a sale by a merchant, manufacturer or person engaged in the business, presupposes a superior expertise and knowledge not possessed by the consumer. Second, the manufacturer or merchant is in a better position to

absorb the loss and spread it throughout the industry. Prosser at § 97. Both philosophical underpinnings are absent in our case of a non-merchant lessor who casually rents a single-family dwelling in Greencastle, Indiana. Following the lead of *Vetor* in the sale of used homes from a non-builder-vendor, we decline to extend an implied warranty of habitability to the rental of a single-family, used dwelling, and therefore we hold it was reversible error for the trial court to so instruct. We are of the opinion that the traditional tort law is adequate for the tenant's protection.

*Issue II. Negligence per se*

In her second argument, Zimmerman argues that the violation of an administrative regulation such as the ABC regulation is not negligence *per se* as instructed in Moores' Instruction No. 11, but is merely some evidence of negligence.

Generally, the violation of a duty prescribed by statute or ordinance is negligence *per se* or as a matter of law, *McCall v. Sisson,* (1975) 166 Ind.App. 403, 336 N.E.2d 660; *Jenkins v. City of Fort Wayne,* (1965) 139 Ind.App. 1, 210 N.E.2d 390; and where a standard of care or duty is fixed and its measure defined by law, the omission of that duty is negligence *per se. Larkins v. Kohlmeyer,* (1951) 229 Ind. 391, 98 N.E.2d 896. Some cases hold that a violation of a statute is only prima facie evidence of negligence constituting a rebuttable presumption of negligence which could be rebutted by evidence of an excuse or impossibility of complying with the particular statute involved. *Blankenship v. Huesman,* (1977) 173 Ind.App. 98, 362 N.E.2d 850; *Wallace v. Hjelm,* (1967) 141 Ind.App. 686, 231 N.E.2d 862.

However, it has been held in Indiana that the violation of an administrative rule is not negligence *per se. Town of Kirklin v. Everman,* (1940) 217 Ind. 683, 29 N.E.2d 206; *Second National Bank v. Sears, Roebuck and Company,* (1979) Ind.App., 390 N.E.2d 229. In *Kirklin, supra,* the facts concerned violations of the administrative rules of the State Fire Marshal. The court said:

> "The [negligence *per se*] instruction is clearly erroneous. The Legislature cannot delegate the power to make laws. *Kryder v. State* (1938), 214 Ind. 419, 15 N.E.(2d) 386; *Town of Walkerton v. New York C. & St. L.R. Co.,* (1939), 215 Ind. 206, 18 N.E.(2d) 799. Nor is this a case in which the Legislature has enacted a law and delegated to a ministerial body the duty of ascertaining the facts upon which the law will operate. In such a case disobedience would be in violation of the statute, and not of a rule of the ministerial board.
>
> It is clear that the statute which authorizes the Fire Marshal to make rules for the safety of life and property was not designed or intended to convey lawmaking power upon the Fire Marshal. Section 20–807, Burns' 1933, § 9521, Baldwin's 1934. The rules are only enforcible [sic] by order in the same manner that other safety orders are enforced. The enforcement of orders is dependent upon notice, and opportunity is provided for a hearing and review by the courts."

217 Ind. at 693, 29 N.E.2d 206.

In *Second National Bank, supra,* the court, citing *Town of Kirklin,* discussed a negligence *per se* instruction involving the ABC's One and Two Family Dwelling Code, and said

> "Although neither party raised the point, we also note that in *Kirklin v. Everman,* (1940) 217 Ind. 683, 29 N.E.2d 206, the court stated that violation of an administrative rule promulgated by the Fire Marshall was held not to be negligence per se. The rules of the Administrative Building Council have very similar statutory authority as that of the Fire Marshall and thus, the *Kirklin* case is authority here."

390 N.E.2d at 232. Violation of an administrative regulation, therefore, is only some evidence of negligence for the jury to con-

sider. The giving of the instruction by the court in the form it read to the jury is reversible error.

In their reply brief, the Moores assert that the court modified the instruction under Zimmerman's insistence, and therefore, Zimmerman invited the error and should be precluded from raising the issue on appeal. Upon reviewing the record, we find that the Moores tendered the instruction which would allow the jury to find Zimmerman negligent *per se* upon finding her in violation of the ABC regulations. The court's modification of the instruction permitted the jury to find the Moores contributorily negligent *per se* upon evidence that they violated the ABC regulations. However, we cannot tell from the record at whose request the last-stated modification was made. Further, the Moores, in their objections to the court's final instructions, never made an objection to that particular modification. As we have already stated above, Zimmerman did properly object to that instruction and thus has preserved the issue for appeal. The record does not support the Moores' contention.

For the above reasons this cause is reversed and the trial court is ordered to grant a new trial.

Reversed.

ROBERTSON, J., and YOUNG, P.J. (Participating by designation), concur.