Judith HINKLEY, Richard Hinkley, Mary Hellemn and Betty Hellemn, Plaintiffs-Appellants,

v.

MONTGOMERY WARD, INCORPORATED, Defendant-Appellee.

No. 3–1284A333.

Court of Appeals of Indiana, Third District.

Sept. 16, 1986.
Rehearing Denied Dec. 16, 1986.

Harry A. Wilson, Jr., Wilson & Kehoe, John M. Choplin, II, Michelle A. Spahr,

Norris, Choplin & Johnson, Indianapolis, John C. Grimm, Grimm & Grimm, Auburn, for plaintiffs-appellants.

John D. Walda, Ronald J. Ehinger, Barrett, Barrett & McNagny, Fort Wayne, for defendant-appellee.

GARRARD, Judge.

The appellant-plaintiffs, Judith and Richard Hinkley and Mary and Betty Hellemn appeal from a jury verdict in favor of the appellee-defendant, Montgomery Ward, Incorporated (Montgomery Ward).

The Hinkleys were in the business of hauling milk from local dairy farms to County Line Cheese. They used several vehicles in their business, including a 1978 Ford truck which was registered as having a gross weight of 30,000 pounds. In late March of 1979, Judith Hinkley purchased a new right front tire for the Ford truck from Montgomery Ward. The tire was mounted and checked by a Montgomery Ward employee.

On April 1, 1979, while enroute to their first milk pick up, the truck crashed into a guardrail and eventually landed upside down on an abandoned railroad right-of-way below the bridge. Judith Hinkley and her cousin, Mary Hellemn, who were passengers in the truck, were seriously injured. Judith's stepson, Mark Hinkley, the driver of the truck, was killed. Mark was sixteen years old and held only a learner's permit. While some evidence was presented at trial to indicate that the driver of the truck was required to have a chauffeur's license, neither Mark nor Judith Hinkley held such a license.

Evidence as to the cause of the crash was conflicting at trial. In a two part complaint, one in products liability, the other in breach of warranty, the appellants contended that the right front tire blew out and caused the truck to collide with the guardrail. Only the right front tire was flat after the collision. In defense, Montgomery Ward claimed that the clean, C-shaped cut in the tire tread indicated that the tire went flat because of the contact with the guardrail. In a general verdict, the jury found against the appellants on both counts.

On appeal, the appellants cite as error the giving of an instruction tendered by Montgomery Ward, Final Instruction No. 17A, which is as follows:

"At the time of the happening of the accident described in the complaint, there was in full force and effect in the State of Indiana certain statutes the applicable provisions of which read as follows:

"(1) IC 9-1-1-2

'The following words and phrases, when used in chapters 1 through 4 of this article shall, for the purpose of chapters 1 through 4 of this article, have the meanings respectively ascribed to them in this section, except in those instances where the context clearly indicates a different meaning:

(aa) Chauffeur.—every person:

(i) employed by another for the principal purpose of operating a motor vehicle registered as having a gross weight of 16,000 pounds or more for the purpose of transporting property;

(ii) operating a motor vehicle registered as having a gross weight of 16,-000 pounds, or more, for the purpose of transporting property for hire; or

(iii) operating a private bus as defined in IC 9-4-1-2.'

(2) IC 9-1-4-26

'No Person shall drive a motor vehicle as a chauffeur unless he holds a valid chauffer's (sic) license. No person shall receive a chauffeur's license unless and until he surrenders to the department any operator's license issued to him.'

(3) IC 9-1-4-29

'A chauffeur's license sahll (sic) not be issued to any person under 18 years of age.'

The Indiana legislature, in adopting the above statutes, has declared that persons under the age of 18 do not possess the requisite care and judgment to operate motor vehicles on public highways as chauffeurs without endangering the lives and limbs of others.

You may consider these statutes in determining whether or not the decedent, Mark Hinkley, misused the truck tire in question."

We agree that the giving of Final Instruction No. 17A was error.

In reviewing assignments of error dealing with jury instructions, this court will make three inquiries: Whether the instruction correctly states the law; whether there is evidence within the record to support the giving of the instruction; and whether the subject of the tendered instruction was adequately covered by other instructions given. *Shelby Federal Savings and Loan Ass'n v. Doss* (1982), Ind. App., 431 N.E.2d 493, 501. It is well settled that the trial court commits error in instructing the jury on propositions of law not pertinent to the issues or applicable to the evidence. *Power v. Brodie* (1984), Ind. App., 460 N.E.2d 1241, 1243.

Initially, the appellants claim that the instruction is an incorrect statement of the law because the lack of a chauffeur's license is not pertinent to the issues or applicable to the evidence. Generally, the weight of authority is to the effect that, since the operator's negligence is to be determined by the facts existing at the time of the accident, mere lack of an operator's license is not in itself evidence of negligence in the operation of the motor vehicle unless there is some causal connection between the injury and the failure to have the license. Annot., 29 A.L.R.2d 963, 970 (1953). *See also Opple v. Ray* (1935), 208 Ind. 450, 455, 195 N.E. 81, 83; *Shaw v. Hart* (1964), 136 Ind.App. 567, 569, 202 N.E.2d 587, 588. It is proper to submit to the jury the question of the causal connection between the manner of the operation of the vehicle by such a driver and the collision. *Garatoni v. Teegarden* (1958), 129 Ind.App. 500, 510, 154 N.E.2d 379, 384. However, unless a causal connection between the injuries and the failure to have a license is shown, the lack of a license is immaterial. *Shaw v. Hart, supra,* 202 N.E.2d at 588.

■ In this case, Montgomery Ward presented some evidence from which to infer that the truck was driven into the guardrail and that the cause was not a flat tire. However, no evidence was presented which would indicate a causal connection between the injuries and the failure to have a chauffeur's license. Therefore, Mark Hinkley's failure to have a chauffeur's license was immaterial, and the trial court committed error in instructing the jury on a proposition of law not pertinent to the issues.

■ In addition, even if evidence had been presented which would indicate that lack of a chauffeur's license caused the injuries, Hinkley's failure to have a license was not pertinent to the defense of misuse. The court instructed the jury that they could consider these statutes in determining whether Mark Hinkley misused the truck tire. Misuse is part of assumption of risk. *Fruehauf Trailer Division v. Thornton* (1977), 174 Ind.App. 1, 11, 366 N.E.2d 21, 29. A consumer who incurs or assumes the risk of injury by virtue of his continuing use of a product after detecting a defect or who uses a product in contravention of a legally sufficient warning, misuses the product, and in the context of the defense of incurred or assumed risk, is subject to the defense of misuse. *Perfection Paint and Color Company v. Konduris* (1970), 147 Ind.App. 106, 119, 258 N.E.2d 681, 689. While the age and qualifications of the operator of a motor vehicle could have been relevant as to proximate cause, it has no relevance to the issue of whether Mark Hinkley continued to drive on a defective tire or used the tire in contravention of a legal warning.

Instructions gain some degree of eminence by incorporating statutes; therefore, extreme care must be taken to avoid misapplication of a statute to issues and evidence. *Board of Commissioners of Miami County v. Klepinger* (1971), 149 Ind. App. 377, 386, 273 N.E.2d 109, 115, *transfer denied.*

"A juror being impressed with the submission of a statute by the court could

well reason that since an accident had occurred, the statute must have been violated, although he doesn't have the remotest idea how such violation is applicable. A juror must assume that any statute given by the court is a correct statement of the law and should be considered by him in determining and ascertaining the issues."

*Id.,* 273 N.E.2d at 114.

In this case, the jurors were told to consider the statutes dealing with chauffeur's licenses in determining whether Mark Hinkley misused the truck tire. This was an improper statement as to application of the statutes and could have misled the jury.[1]

■ Montgomery Ward contends that if Final Instruction No. 17A was erroneous, the error was harmless. However, it must be assumed that an instruction concerning the basis for liability which misstates the law has influenced the result at trial unless it appears from the evidence or record that the verdict under proper instructions could not have been different. *Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690, 693. Montgomery Ward claims that the verdict at trial could not have been different under proper instructions. Therefore, we must examine the record and evidence to see if under proper instructions the verdict could have been different. *Id.* at 693.

After the collision only the right front tire was flat. Expert testimony was in dispute as to whether a manufacturing defect caused the tire to blow out or whether the tire blew as a result of the impact with the guardrail. Despite the fact that the conditions were good, the weather was clear, the road was not wet or icy, an eyewitness to the collision testified that the truck veered off suddenly and hit the guardrail. It was his opinion that the truck veered as a result of a blown tire. No defects were found either in the steering or the other tires. From this evidence,

the verdict could have been different had the instruction not been given.

Montgomery Ward further contends that the instruction played no role in the jury's decision. It contends that the elements necessary to establish the appellants' strict liability and implied warranty claims were identical, yet the instruction on misuse applied only to strict liability. Since the jury also found against the appellants on the implied warranty claim, it claims that the jury did not consider the defense of misuse. It is not the province of appellate review to speculate on whether a jury reached the decision they did on the proper instructions or the improper ones. *Zimmerman* at 693. Furthermore, the jury was never instructed that Montgomery Ward's misuse defense applied only to the appellants' strict liability claim. Since it is not clear that the same verdict would have been reached had the instruction not been given, we must assume that the erroneous instruction influenced the result.

■ In the alternative, Montgomery Ward alleges that if a new trial is necessary, it should be limited to the claim of Mark Hinkley's estate. The last paragraph of the instruction states: "You may consider these statutes in determining whether or not the decedent, Mark Hinkley, misused the truck tire in question." Montgomery Ward claims that the instruction pertains only to Mark Hinkley. However, the instruction does not indicate that Hinkley's misuse would bar only his claim. In fact, other instructions would indicate otherwise. Final Instruction No. 15 stated:

"If plaintiffs did in fact misuse the defendant's product, and such misuse, if any, is either the only proximate cause or a concurrent proximate cause of the accident, then *they* would not be entitled to recover damages." (emphasis added)

Instructions must be read as a whole in order to glean their impact. *American States Ins. Co. v. Morrow* (1980), Ind.App., 409 N.E.2d 1140, 1143. Reading these two

---

1. Appellants claim that there was insufficient evidence to bring Mark Hinkley within the definition of "chauffeur." Since we have concluded that the giving of the instruction was error, we need not decide whether the instruction was supported by the evidence.

instructions together, the jury could have believed its duty was to consider the chauffeur's statutes in determining whether Mark Hinkley misused the tire, and if it so found, all the appellants would be barred from recovery. We believe that the impact of Instruction No. 17A was to obscure the real issues and mislead the jury. Accordingly, we must reverse the jury's verdict and remand for a new trial.

Reversed and remanded.

STATON, P.J., and HOFFMAN, J., concur.