Garfield DAWSON, by His Mother Tanya DAWSON, As Next Friend, Appellant (Plaintiff Below),

v.

William LONG d/b/a Hoosier Homes, Appellee (Defendant Below).

No. 49A04–8710–CV–308.

Court of Appeals of Indiana, Fourth District.

Dec. 7, 1989.

Michelle A. Spahr, John M. Choplin, II, Norris, Choplin & Johnson, Indianapolis, for appellant.

Robert F. Wagner, Jane Magnus D'Alesandro, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for appellee.

MILLER, Judge.

This action arose after one-month-old Garfield Dawson was permanently injured as a result of a fall out of the second-story window of an apartment owned by William Long, d/b/a Hoosier Homes, and being rented by Marvin Tardy whom Dawson was visiting when he was injured. Tanya

Dawson, the infant's Mother, as Next Friend, brought suit against Long alleging four theories of recovery: negligence, nuisance, breach of an implied warranty of habitability, and breach of an express or implied covenant to repair. After a hearing on Long's motion for summary judgment, the trial court granted the motion, finding that there was no issue as to any material fact. Dawson appealed, alleging errors which we consolidate as follows:

(1) there was a material issue of fact regarding Long's liability to Dawson under Dawson's claim of negligence; and

(2) there was a material issue of fact regarding Long's liability to Dawson under Dawson's theory Long breached an implied warranty of habitability.

We reverse on the negligence issue, and affirm the trial court on the issue of the implied warranty of habitability.

## FACTS

The facts stated most favorably to Dawson are as follows: On August 20, 1984, Almedia, a/k/a Amelia, McLayea took her infant nephew, Dawson, to visit a friend, Tardy, at his second-story duplex apartment at 3025 North Washington Boulevard in Indianapolis. As McLayea was leaving the apartment, she walked down the stairway, carrying Dawson in an infant seat. Before she reached the landing about four steps down from the top of the flight of wooden stairs, she caught her heel on a stair, slipped, and fell forward. There was no handrail along the stairway by which she could break her fall. Instead, her shoulder struck a window at the landing, the window broke, the rotted screen behind it collapsed, and Dawson fell through the opening to the ground below. Although Dawson was not cut by glass, he received severe, permanent injuries, including brain damage, from the fall.

Dawson offered Tardy's deposition into evidence in which Tardy testified that he had signed an agreement with Long to rent the apartment on a month-to-month basis

on May 2, 1983. (Record at p. 90); (Exhib. A at p. 120). They had no agreement about repairs, either oral or written. Tardy testified, however, that during the period of the lease Long had agreed to make repairs on the apartment if Tardy paid for them. Tardy testified that he had told Long during the first couple of months of the lease that the wooden stairs were slippery and needed some rubber or nonslip material on them, and there was no handrail along the stairs. He said his mother could not visit him because she could not come up the stairs without a handrail. Tardy said Long did nothing about the situation until approximately one week after Dawson's accident when Long installed a handrail along the top four stairs leading to his apartment.

Tardy described the stairway as having four steps down to a landing where there was a window, and then, after turning left, there were about ten more steps down to the first floor. He said the window was about four-feet wide and six-feet high and stood about one foot above the landing. There was no guard rail in front of the window. He described the window as loose, having very little putty left around it, and the screen as being rotten. He said the whole piece of screen gave way when McLayea's shoulder hit it.

Tardy testified further that he had complained to Long about other problems with a sink and pipe that caused leaking from his apartment into the apartment below. Tardy said Long did not take action to correct these problems until after the instant incident when Long was attempting to sell a portion of the duplex. (Record at p. 116).

Dawson also offered McLayea's affidavit into evidence in which she stated that at the time of the accident she was not aware that the stairs were slippery, there was no handrail on the stairs, the window was loose, or the screen was rotten.

Dawson introduced into evidence copies of notices sent to Long by the Marion County Health Department indicating violations of the Health Code.[1] One such notice

---

1. Marion County, Inc., The Health and Hospital Corporation Gen. Ordinance No. 2–1980 ch. 10

(updated 1982).

dated August 9, 1984, pertained to the dwelling where Tardy lived. Also, Dawson introduced into evidence a certified copy of chapter 10 of the Health Code which pertains to housing.

Long offered his deposition into evidence. He testified that his business was renting properties, and that he owned about 28 properties at the time of Dawson's accident. He said that most of his properties were single-family residences and doubles. He described the property he rented to Tardy as a duplex, which he defined as "[o]ver and under units." He said that both units in the dwelling he rented to Tardy had the same address, and that Tardy lived in the upstairs unit.

Long testified that his practice was to inspect his properties before renting them, and that an inspection of Tardy's unit was made before Tardy's tenancy began; however, he did not remember making the inspection personally. He said that normally before a unit was rented someone would go into the unit and look around and make a list of repairs to be done; then, the list would be discussed, decisions would be made about what repairs would be done, and the list of repairs would eventually be thrown away. He noted that he did not have a routine checklist for inspectors to take on an inspection, but sometimes independent contractors provided their own checklists. He said he normally checked to determine whether there was trash to be removed, plumbing that needed to be put in working condition, windows that needed replacing, locks that needed repairing, and to see if there were roaches or fleas. He said he would also correct any unsafe or unsanitary conditions. He said he had placed slip resistant materials on stairs in some of his buildings, but there was none on the stairs in Tardy's building.

Long testified that he did not show the unit to Tardy before Tardy rented it, and he did not know who, if anyone, had. He said that sometimes he just left a unit open in order to allow prospective renters to let themselves in to look at a place. He said he had been on the premises of Tardy's apartment at some time before Dawson's accident occurred, but he did not know whether or not he was aware of the layout of the apartment and the stairway at the time the accident occurred. He said that Tardy had never complained to him about anything before the date of Dawson's injury. After Dawson's injury occurred, however, Tardy had telephoned him to say the stairway was a hazard. Then, Long said he had a handrail installed on the stairway in the hall between Tardy's apartment and the landing, and he also replaced the broken window. He noted that he did these things at his own expense and without asking for reimbursement from anyone else.

Long did acknowledge that the tenant in the unit below Tardy's apartment had complained to his office before the instant incident about ceiling leaks, water in the basement, and a bad electric switch. He said he had sent different subcontractors to the apartment to try to rectify these problems, but that the tenant would call periodically to complain that the problems persisted. He said the tenant finally complained to the Board of Health which commanded him to make certain repairs within a designated period of time, and he had attempted to make those repairs, but was not certain whether he had done so. He said he paid for any repairs which were made. Also, he said he had either repaired or replaced a rotten rear stairway that the previous tenant who occupied Tardy's apartment had complained to him about, and he paid for that work.

Long acknowledged that he had an obligation to comply with the Marion County Health Code, and that he had been cited previously for violations of the housing ordinance.

In Long's appellee's brief, he adds to the facts that it was undisputed the stairway on which the incident occurred was not a common area. Long refers to Dawson's responses to his request for admissions in which he asked Dawson the following questions and Dawson gave these responses:

"1. That the stairway in the apartment of Marvin Tardy is within the leasehold premises leased to Marvin Tardy by Defendant.

RESPONSE: Admit.

2. That the stairway in question was not a common area of his building located at 3025 North Washington Boulevard, Indianapolis, Indiana.

RESPONSE: Admit." (Record at p. 65).

## DECISION

On review of a grant of summary judgment this court uses the same standard as that applied by the trial court. A motion for summary judgment will be upheld only if the pleadings and other matters filed with the court reveal there are no conflicts as to any material fact or as to any material inferences which could reasonably be drawn from the facts, and the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(C); *Mullen v. Tucker* (1987), Ind. App., 510 N.E.2d 711. In determining whether the summary judgment was properly granted, the facts provided by the opponent are accepted as being true, and any doubts are resolved against the moving party. *Ingram v. Hook's Drugs, Inc.* (1985), 476 N.E.2d 881, 883. In this case, as in all other summary judgment proceedings, the burden is on the moving party to establish the lack of any genuine issue of material fact. *Ancich v. Mobil Oil Corp.* (1981), Ind.App., 422 N.E.2d 1320.

 Dawson asserts that there was evidence Long violated several sections of the Health Code. A non-excused or non-justified violation of a duty dictated by statute or ordinance is negligence *per se. Ray v. Goldsmith* (1980), Ind.App., 400 N.E.2d 176. In order for a fact finder to determine there was negligence *per se,* there must be evidence there was a violation of a statute or ordinance, and that the violation proximately caused the injury complained of. *Id.*

Here, Dawson introduced into evidence a certified copy of the chapter on housing of the Marion County Health Code. The Health Code was announced officially to "protect, preserve, and promote the physical and mental health and social well-being of the people," and to "insure that the quality of housing is adequate for protec-

tion of public health, safety and general welfare." Marion County, Ind., The Health and Hospital Corporation Gen. Ordinance No. 2–1980 ch. 10 art. 1 § 10–102. Section 10–301 of the Health Code provides for the general responsibilities of owners as follows:

"No owner ... shall occupy or let to another person any dwelling or dwelling unit unless it and the premises are clean, sanitary and fit for human occupancy." *Id.*

The Code explicitly sets out the owner's responsibility as to handrails in Section 10–408 as follows:

"Structurally sound handrails shall be provided on any steps containing four (4) risers or more." *Id.*

The Code also requires in Section 10–701 that:

"Every ... inside and outside stair ... shall be safe to use and capable of supporting the loads that normal use may cause to be placed thereon; and shall be kept in sound condition and good repair. Every inside and outside stair or step shall have uniform risers and uniform treads." *Id.*

The Code further requires proper fitting screens for doorways and openings, *Id.* at Section 10–705, and, too, that:

"[e]very ... window shall be reasonably weather-tight, water-tight and damp-free, and shall be kept in sound condition and good repair." *Id.* at Section 10–702.

Long acknowledged in testimony that he had an obligation to comply with the Health Code. He did not deny that he had been cited previously for violations of the Code. He neither offered evidence of excuse nor justification for any violations of the Code.

██ In order for a violation of a statute or ordinance to be held as negligence *per se,* a trier of fact must determine whether the statute is applicable. It must decide whether the statute was designed to protect the class of persons in which the plaintiff is included against the risk of the type of harm which has occurred as a result of its violation. *Ray, supra;* W. Prosser,

Law of Torts, p. 229–30 § 36 (5th ed. 1984). The Health Code is intended as a health and safety measure to protect the public, including men, women, children and infants from harm. The Code is designed to regulate properties so as to minimize potential dangers to the public. Further, it is well established a landlord's duties and liabilities to business visitors and social guests of a tenant are the same as those he owes to the tenant. *Slusher v. State* (1982), Ind.App., 437 N.E.2d 97. Thus, the Health Code is clearly applicable to protecting the class of persons of which Dawson is included.

■ Once it is found the Code applies, it must be determined whether the Code was violated. In this case there was undisputed evidence there was no handrail along the top four stairs leading to Tardy's apartment, there were no treads on the stairs even though the stairs were wooden and slippery, the window was loose, and the screen outside the window was rotten. There was no guard rail across the tall window that existed on the landing of the stairway. It is clear there was sufficient evidence from which a fact finder could conclude the stairway and the landing presented a safety hazard to users, and that Long had violated one or more provisions of the Health Code.

Still, negligence *per se* does not mean there is liability *per se*. The violation of a statutory duty is not actionable negligence unless it is also the proximate cause of the injury. *Ray, supra.* Here, McLayea stated by affidavit that at the time of the incident she was unaware the stairs were slippery, there was no handrail, the window was loose or the screen was rotten. Although Tardy testified he did not actually see McLayea fall, his account of how the accident occurred was that McLayea fell forward down the stairs while carrying Dawson in an infant seat. She had no handrail to grasp so as to break her fall, and she fell into the tall, unobstructed window at the landing. The window was loose and gave away, and the whole piece of screen behind it collapsed and fell out. When her shoulder struck the window and the window and screen offered no support but instead fell out and created an opening, Dawson fell through the second-story opening to the ground. Thus, we find there was evidence from which a fact finder could reasonably conclude Dawson's injury was foreseeable and would not have occurred had Long observed the regulations of the Code. Or, that Long's failure to observe the requirements of the Code was a substantial factor in producing the injury to Dawson, and was, therefore, the proximate cause of the injury.

■ Dawson's second allegation of error is that there was a material issue of fact regarding Long's liability to her under her theory Long breached an implied warrantability of habitability. We do not view Dawson's claim of error as a dispute on a material issue of fact. Rather, Dawson urges this court to address the legal question of whether an implied warranty of habitability is recognized to guests. Thus our appellate courts have not seen fit to extend the rule to a guest.

Yet, Dawson correctly points out that Indiana has recognized an implied warranty of habitability by a landlord. *Breezewood Management Company v. Maltbie* (1980), Ind.App., 411 N.E.2d 670. But, *Breezewood* was an action by tenants against a landlord for damages resulting from the breach of a contract. It was not an action for damages to recover for injuries to the tenants themselves.

Still, Dawson calls our attention to the case of *Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690, in which this court indicated that an implied warranty of habitability could be owed to a tenant who suffered personal injuries. But, in *Zimmerman* we found that certain philosophical justifications for supporting the implied warranty of habitability were absent because Zimmerman was not a professional landlord. Because Zimmerman was not a professional landlord, we determined that we would not presuppose she had superior knowledge to Moore, or that she was in a better position to absorb the loss and spread it throughout the industry. *Id.* at

695 (citing W. Prosser, Handbook of the Law of Torts § 97 (4th ed. 1971). Therefore, we denied recovery to the tenant for injuries under the theory of an implied warranty of habitability.

Here, Dawson wants to address whether an implied warranty of habitability should be extended beyond a tenant to a guest who was injured. Dawson has cited no authority in Indiana for extending the rule, and we see no reason for extending the rule in the present case.

Judgment reversed in part, and affirmed in part.

CONOVER, J., concurring.

BAKER, J., dissenting with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent.

The majority seeks to hold a landlord liable for the injuries received by a tenant or his guest due to a condition of the leased premises which allegedly violates municipal housing standards embodied in the local health code. This holding is contrary to the principles of landlord-tenant liability previously enunciated by our courts.

The traditional view of a landlord's liability for tortious injuries provides that in the absence of covenant, fraud, or concealment, a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant and other persons lawfully upon the premises. *Purcell v. English* (1882), 86 Ind. 34; *Great Atlantic and Pacific T. Co., Inc. v. Wilson* (1980), Ind.App., 408 N.E.2d 144; *Hunter v. Cook* (1971), 149 Ind.App. 657, 274 N.E.2d 550; *Stover v. Fechtman* (1966), 140 Ind.App. 62, 222 N.E.2d 281; *Walker v. Ellis* (1955), 126 Ind.App. 353, 129 N.E.2d 65. The landlord is not liable for personal injuries to a tenant for defective premises unless he expressly agrees to repair and is negligent in doing so. *Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690; *Hunter, supra; Stover, supra.* In the case at bar, it is undisputed that the rental agreement between Long and Tardy contained no covenant to repair. Moreover, there were no other written or oral agreements between Long and Tardy concerning repair or maintenance of the premises. Thus, as a matter of law, Long cannot be liable for any alleged failure to repair the premises.

Furthermore, a landlord cannot incur liability for failure to repair a hidden defect, unless the tenant's injuries caused by the hidden defect are known to the landlord but unknown to the tenant. *Zimmerman, supra; Stover, supra.* No liability accrues to the landlord where he is without knowledge of the latent defect. *Id.* Defects which are in plain view are of the type which a lessee is reasonably expected to discover. *Stover, supra.* It is undisputed that the lack of a handrail, the stairway surface, and the condition of the window were conditions known by Tardy. For this reason alone, the allegedly defective condition of the premises do not fall within the latent defect exception. Further, the evidence establishes that Long was not aware of the condition of the window, and Dawson concedes that the lack of a handrail and the condition of the stairway surface were readily visible. Because the tenant had knowledge of the allegedly defective conditions complained of, because there is no evidence Long was aware of the condition of the window, and because the condition of the stairway was readily visible, there was no duty on Long's part, and hence no liability, to repair the alleged latent defects in question.

Finally, a landlord has a duty to maintain in safe condition the common stairways and other parts of the building used in common by tenants and business visitors and social guests of a tenant over which the landlord retains control. *Slusher v. State* (1982), Ind.App., 437 N.E.2d 97, *trans. denied; Rossow v. Jones* (1980), Ind.App., 404 N.E.2d 12; *Coleman v. DeMoss* (1969), 144 Ind.App. 408, 246 N.E.2d 483. There has been no allegation, however, that the stairway where Dawson's aunt fell was a common area over which Long retained control. Thus, there is no basis for extending liability to Long under this rule.

Although health codes have been cited in discussions regarding landlord liability, such has been the case only with regard to actions against landlords for breach of implied warranties of habitability. *See Breezewood Management Company v. Maltbie* (1980), Ind.App., 411 N.E.2d 670. Health codes have never formed the basis for extending liability under the traditional rules of premises negligence. The majority's reliance upon local health codes in an attempt to rewrite the rights and liabilities of tenants and landlords is inappropriate. The modification of the common law in this respect is a function more properly performed by our supreme court or the general assembly.

I would vote to affirm the trial court's entry of summary judgment.