Terri J. JOHNSON, Appellant–Plaintiff,

v.

SCANDIA ASSOCIATES, INC. and Oxford Management Co., Appellees–Defendants.

No. 06A01–9310–CV–326.

Court of Appeals of Indiana, First District.

Oct. 12, 1994.

Order Modifying Footnote and Otherwise Denying Rehearing Jan. 18, 1995.

William T. Rosenbaum, Hyatt & Rosenbaum, Indianapolis, for appellant.

Peter A. Schroeder, Norris, Choplin & Schroeder, Indianapolis, for appellees.

NAJAM, Judge.

## STATEMENT OF THE CASE

Terri J. Johnson appeals from the trial court's order granting a motion to dismiss her implied warranty of habitability claim filed by Scandia Associates, Inc. ("Scandia"), the owner of her apartment building, and by Oxford Management Co. ("Oxford"), Scandia's property management company. Johnson suffered personal injuries from an electric shock when she simultaneously touched the oven and refrigerator in her apartment at Scandia apartments. She sued Scandia and Oxford on two theories: (1) negligence and (2) breach of the implied warranty of habitability. On the day of trial, Scandia and Oxford filed a motion to dismiss Johnson's breach of warranty claim. The trial court granted the motion, and the case went to trial solely on the issue of negligence. A jury found that Scandia and Oxford were not negligent, and Johnson appeals only from the dismissal of her implied warranty of habitability claim.[1]

We affirm in part and reverse and remand in part.

## ISSUE

Johnson raises only one issue for our review: whether the implied warranty of habitability in a residential lease agreement includes damages resulting from personal injury.

## DISCUSSION AND DECISION

Johnson alleged in her second amended complaint that the electric shock injury she sustained in her apartment constituted a breach of the warranty of habitability implied in her written lease with Scandia. Johnson acknowledges that our courts have not held that this warranty applies to claims for personal injuries. However, she contends that the implied warranty of habitability in residential leases should be extended to personal injury claims to carry out the reasonable expectations of the parties. Scandia and Oxford disagree and rely upon our decision in *Hodge v. Nor–Cen, Inc.* (1988), Ind.App., 527 N.E.2d 1157, *trans. denied.* They contend that, just as the plaintiff in *Hodge*, Johnson has failed "to present a compelling argument for extension of the warranty of habitability to personal injury claims." *Id.* at 1162.

We begin our discussion with a brief review of the history of the implied warranty of habitability in Indiana. Our supreme court first recognized the implied warranty of habitability between a builder-vendor of a new home and the home's purchaser. *See Theis v. Heuer* (1972), 264 Ind. 1, 12, 280 N.E.2d 300, 306. Four years later, the supreme court extended the warranty from the builder to second and subsequent purchasers of a home where the subsequent owner incurs damages from latent defects in the home which become manifest after the purchase and are not discoverable upon reasonable inspection. *Barnes v. Mac Brown & Co.* (1976), 264 Ind. 227, 229, 342 N.E.2d 619, 620–21. Then, in *Breezewood Management Co. v. Maltbie* (1980), Ind.App., 411 N.E.2d 670, *trans. denied,* this court relied upon *Theis* and *Barnes* and for the first time considered a claim for breach of the implied warranty of habitability in a residential lease. *Id.* at 674–75.

There is no dispute in this case whether the implied warranty of habitability is read into a residential lease agreement. Since *Breezewood Management,* our courts have acknowledged the existence of this warranty several times in the landlord and tenant context. *See, e.g., Dawson by Dawson v. Long* (1989), Ind.App., 546 N.E.2d 1265, 1269, *trans. denied; Hodge,* 527 N.E.2d at 1161; *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 731, *trans. denied.* Thus, this appeal presents the narrow question whether upon a breach of the implied warranty of habitability, a tenant may recover damages for personal injury as well as damages for economic loss.

1. We heard oral argument on August 25, 1994.

On this issue we find guidance in our supreme court's decision in *Barnes* where the court observed:

> The contention that a distinction should be drawn between mere 'economic loss' and personal injury is without merit. *Why there should be a difference between an economic loss resulting from injury to property and an economic loss resulting from personal injury has not been revealed to us.* When one is personally injured from a defect, he recovers mainly for his economic loss. Similarly, if a wife loses a husband because of injury resulting from a defect in construction, the measure of damages is totally economic loss. We fail to see any rational reason for such a distinction.

*Barnes,* 342 N.E.2d at 621 (emphasis added). We are likewise unconvinced that, upon a breach of the implied warranty of habitability in a residential lease, a distinction exists between recovery of damages for economic loss and recovery of damages for personal injury.

■ A lease is a contract, and the implied warranty of habitability is likewise grounded in principles of contract. *Whiteco Indus., Inc. v. Nickolick* (1991), Ind.App., 571 N.E.2d 1337, 1339, *trans. denied; Kahf,* 461 N.E.2d at 732. Generally, recovery for breach of contract includes damages that may reasonably be considered to have arisen naturally from the breach or to have been in the contemplation of the parties at the time they entered the contract as a probable result of the breach. *Orto v. Jackson* (1980), Ind.App., 413 N.E.2d 273, 278; *see Hadley v. Baxendale* (1854), 9 Ex. 341, 156 Eng.Rep. 145. A landlord's warranty of habitability is an implied promise to "avoid hidden defects or concealed dangers." *Barnes,* 264 Ind. at 229, 342 N.E.2d at 620 (quoting *J.I. Case Co. v. Sandefur* (1964), 245 Ind. 213, 222, 197 N.E.2d 519, 523). Therefore, when a dangerous condition exists in the leased premises

which is hidden or concealed from the tenant, damages for personal injury caused by the dangerous condition are within the contemplation of the parties as the probable result of the landlord's breach of the warranty. There is no rational reason to preclude recovery of damages for personal injury when such damages arise naturally from the condition of the premises. *See id.* at 230, 342 N.E.2d at 621.

### Analogy to Law of Sales

The decisions in *Theis* and *Barnes* demonstrate that the implied warranty of habitability in a residential lease had its origins in the law of residential sales. Further, our supreme court has noted that with respect to the implied warranty of habitability, the sale of real estate should not be treated differently from the sale of personal property. *Barnes,* 264 N.E.2d at 230, 342 N.E.2d at 621.

Accordingly, we find additional guidance in the provisions of our commercial code governing recovery of damages for the sale of defective goods.[2] Unless expressly excluded or modified, a warranty of merchantability is implied in a contract for the sale of goods if the seller is a merchant with respect to goods of that kind. IND.CODE § 26–1–2–314(1). If a seller breaches a contract for the sale of goods, the buyer may recover consequential damages resulting from the breach including *"injury to person* or property proximately resulting from *any breach of warranty."* IND.CODE § 26–1–2–715(2)(b) (emphases added). Those provisions permit recovery of damages for personal injury for breach of an implied warranty in the sale of goods. *See, e.g., Auto–Teria, Inc. v. Ahern* (1976), 170 Ind.App. 84, 97, 352 N.E.2d 774, 783, *trans. denied.*

■ The implied warranty of merchantability in the sale of goods applies only to sales from merchants, that is, sellers that deal in goods of that kind. *See* I.C. § 26–1–2–314(1); IND.CODE § 26–1–2–104(1). A seller is not a "dealer" in goods of a particular kind when he makes casual or occasional sales of those goods. *Sebasty v. Perschke* (1980), Ind.App., 404 N.E.2d 1200, 1203, *trans. denied.* Rather, to be a merchant who

---

**2.** Article 2.1 of our commercial code, governing Leases of goods, contains relevant provisions virtually identical to provisions in the article on Sales and is likewise useful authority. *See* IND. CODE § 26–1–2.1–101 *et seq.*

deals in goods, the seller must be in the business of selling those goods and sell them on a regular basis. *id.* In other words, the implied warranty of merchantability applies only to merchant sellers who have acquired a professional status as to particular kinds of goods. I.C. § 26–1–2–104 Comment 2.

In the landlord and tenant context, the analog to the merchant seller is the professional landlord that is in the business of renting dwellings to tenants. The landlord's "goods" have been described as:

> a well known package of goods and services ... which includes not merely a wall and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance.

*Breezewood Management,* 411 N.E.2d at 674 (quoting *Javins v. First Nat. Realty Corp.* (D.C.Cir.1970), 428 F.2d 1071, 1074, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185). Thus, as with the merchant who deals in goods of a particular kind, the professional landlord should be liable to the tenant for damages under the implied warranty of habitability when the "package of goods and services" comprising the leased premises cause personal injury.[3]

The analogy to damages for a merchant's breach of an implied warranty in the sale of goods was made complete by our decision in *Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690, where we held that the implied warranty of habitability does not extend to a non-merchant lessor. *Id.* at 695–96. There, we noted the two principal philosophical justifications supporting the implied warranty doctrine: (1) the requirement of a sale by a merchant, manufacturer or person engaged in the business, presupposes a superior expertise and knowledge not possessed by the consumer and (2) the merchant is in a better position to absorb the loss and spread it throughout the industry. *Id.* We reasoned in *Zimmerman* that both philosophical underpinnings are absent when a non-merchant

lessor casually rents a single-family dwelling in Greencastle, Indiana. *Id.* at 696.

The requirement of a professional landlord, found lacking in *Zimmerman,* is present in this case. Johnson's second amended complaint discloses that Johnson rented an apartment at the Scandia apartment complex located in Indianapolis. Scandia apartments is owned by Scandia Associates, an Indiana limited partnership, and is managed by Scandia's agent, Oxford Management Company. It does not appear from the face of Johnson's complaint that Scandia is a "non-merchant lessor who casually rents a single-family dwelling." *Id.* Rather, construed most favorably to Johnson, the complaint demonstrates that Scandia is a professional landlord in the business of renting apartments and is in a better position to absorb and spread the costs of liability for personal injury claims. *See id.* at 695–96.

Scandia and Oxford rely extensively on this court's decision in *Hodge v. Nor–Cen, Inc.* (1988), Ind.App., 527 N.E.2d 1157, *trans. denied,* the only other reported decision in Indiana besides *Zimmerman* in which a tenant sought to recover personal injury damages from a landlord under an implied warranty of habitability theory. In *Hodge,* several tenants were injured and two others were killed when an unknown individual started a fire in their apartment building. *Id.* at 1159. We held in *Hodge* that "because the appellants fail to present a compelling argument for the extension of the warranty of habitability to personal injury claims, we leave the issue to another time." *Id.*

*Hodge* does not control in the instant case because in *Hodge* this court did not decide whether a tenant has a claim for personal injuries under the implied warranty of habitability. Rather, the tenants in *Hodge* relied on *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, *trans. denied,* in support of their argument that personal injury claims were recoverable under the implied warranty of habitability. *Id.* at 1161–62. We noted that *Kahf* never reached this question because, in that case, the plaintiffs were not in privity of contract with the

---

**3.** We reaffirm this court's commitment in *Breezewood Management* to "support the reasonable expectations of the contracting parties whenever possible." *Breezewood Management,* 411 N.E.2d

at 675 n. 2. We agree that "[o]ne who, 'with open eyes,' rents a hovel cannot later expect and sue for the Waldorf Astoria." *Id.*

landlord. *Id.* at 1162; *see Kahf,* 461 N.E.2d at 731. Because the plaintiffs' in *Hodge* failed to refer us to any pertinent authority in support of their position, we did not address the merits of the plaintiffs' implied warranty of merchantability argument.

■ In sum, we conclude that no valid reason exists to distinguish between a tenant's damages for injury to personal property or loss in use of the premises and damages for personal injury caused by the landlord's breach of the warranty of habitability. Implied warranties are imposed by operation of law for the protection of the consumer, and they must be liberally construed in favor of the consumer. *See Richards v. Goerg Boat & Motors, Inc.* (1979), 179 Ind.App. 102, 110, 384 N.E.2d 1084, 1091, *trans. denied.* Further, unlike in *Zimmerman* and *Hodge,* the facts of this case and arguments advanced by counsel support recovery of personal injury damages under a warranty theory.

■ We hold that the implied warranty of habitability in a residential lease extends to claims for personal injuries that result from a dangerous condition in the leased premises which is hidden or concealed. Consistent with our decisions in *Zimmerman* and *Kahf,* the plaintiff's implied warranty claim for personal injuries is actionable only if (1) the landlord is a professional landlord in the business of renting dwellings on a regular basis and (2) the plaintiff is a tenant in privity of contract with the landlord. *Cf. Martin Rispens & Son v. Hall Farms, Inc.* (1993), Ind., 621 N.E.2d 1078, 1084 n. 2 (privity of contract required for action on implied warranty of merchantability).

■ At oral argument, Scandia and Oxford expressed concern that extending the implied warranty of habitability to personal injury claims would subject landlords to strict liability whenever tenants are injured in the leased premises. However, by our decision we do not adopt a rule of strict

liability. Privity of contract is an element of an implied warranty of habitability claim in Indiana, *see Kahf,* 461 N.E.2d at 731, and the privity requirement for the implied warranty of habitability distinguishes this theory of landlord liability from strict liability in tort. *See* IND.CODE § 33–1–1.5–3(b)(2) (for strict liability, user or consumer of product not required to have entered into any contractual relation with seller). Further, the standard for whether a breach of the implied warranty has occurred is one of reasonableness in light of the surrounding·circumstances. *Barnes,* 264 Ind. at 229, 342 N.E.2d at 621. Here, whether Scandia is a professional landlord, whether Scandia breached the implied warranty of habitability in its lease with Johnson and whether Scandia's breach caused Johnson's injuries and damages are all questions of fact on which Johnson bears the burden of proof at trial.[4]

### Motion to Dismiss

■ A Trial Rule 12(B)(6) motion to dismiss tests the legal sufficiency of the complaint. *South Eastern Ind. Natural Gas Co. v. Ingram* (1993), Ind.App., 617 N.E.2d 943, 946, *trans. denied.* On review, we do not assess the sufficiency of the facts in support of the complaint but instead determine if the complaint states any set of allegations upon which the trial court can grant relief. *Id.; Browning v. Walters* (1993), Ind.App., 616 N.E.2d 1040, 1043.

Here, we cannot say from the allegations of Johnson's complaint that, under any set of circumstances, she would not be entitled to relief against Scandia for a breach of the implied warranty of habitability. *See Browning,* 616 N.E.2d at 1043. Accordingly, we conclude that Johnson's implied warranty of habitability claim was inappropriate for adjudication on Scandia's motion to dismiss.[5]

■ However, there is no factual dispute that when Oxford executed the lease with

---

4. There appears to be no dispute that Johnson is in privity of contract with Scandia. However, as shown above, while privity of contract is a prerequisite to liability as a professional landlord under the implied warranty of habitability, Scandia is not required to be the builder of Scandia apartments. *But cf. Vetor v. Shockey* (1980), Ind.App., 414 N.E.2d 575, 577 (implied warranty

of habitability does not apply to nonbuilder-vendor).

5. In reaching our decision we acknowledge that the trial court followed the case law then in effect when it granted Scandia's motion to dismiss.

Johnson, it did so as Scandia's agent.[6] Therefore, Oxford was not a party to the lease. *See Worley v. Moore* (1881), 77 Ind. 567, 570–71; *Sharp v. Jones* (1862), 18 Ind. 314, 315. Absent privity of contract with Johnson, Oxford cannot be liable to Johnson under an implied warranty of habitability theory. *See Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 731, *trans. denied.* We hold that summary judgment was properly entered for Oxford.

We affirm the entry of summary judgment for Oxford. The judgment for Scandia is reversed and remanded for proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.

SHARPNACK, C.J., and ROBERTSON, J., concur.

### OPINION ON REHEARING

(Jan. 18, 1995)

We issue this opinion on rehearing to address a question raised by Appellee, Scandia Associates, Inc., which has filed a petition for rehearing from this court's opinion of October 12, 1994: whether a professional landlord may expressly disclaim the implied warranty of habitability in a residential lease. In the last sentence of footnote 3 in our opinion, we interpreted the decision in *Breezewood Management Co. v. Maltbie* (1980), Ind.App., 411 N.E.2d 670, *trans. denied,* to mean that the parties to a residential lease may "effectively disclaim the implied warranty of habitability...." *Johnson v. Scandia Associates, Inc.* (1994), Ind.App., 641 N.E.2d 51, 55 n. 3. Scandia has seized upon this language to argue that our opinion should have only prospective application and that it should be able to disclaim the implied warranty of habitability in its future leases.

In Scandia's petition for rehearing, footnote 3 of our opinion has assumed an importance far beyond its significance. By "effectively disclaim," we meant only that under the facts and circumstances of a particular case, it is conceivable that a warranty of habitability would not be a reasonable expectation of the parties to the lease. In our opinion we decided only whether a tenant could recover damages resulting from personal injury under the implied warranty of habitability in a residential lease. *Johnson,* 641 N.E.2d at 53. The question was not presented, and we did not decide in a footnote, whether the implied warranty of habitability can be expressly disclaimed in a residential lease.

Accordingly, in order to avoid an extension of our holding beyond its reach, we have withdrawn the last sentence of footnote 3 in the opinion, which shall now read as follows:

[Editor's Note: Modification to footnote incorporated for purposes of publication.]

We affirm this court's commitment in *Breezewood Management* to "support the reasonable expectations of the contracting parties whenever possible." *Breezewood Management,* 411 N.E.2d at 675 n. 2. We agree that "[o]ne who, 'with open eyes,' rents a hovel cannot later expect and sue for the Waldorf Astoria." *Id.*

In all other respects the petition for rehearing is denied.

---

**6.** The pre-printed lease form read as follows:
Lessor: Oxford Management Co., Agent–Owner Scandia Associates d/b/a

Scandia Apartments
By: _____
Management Representative